[Civ. No. 410.  First Appellate District.—April 21, 1908.]

## GAZOS CREEK MILL AND LUMBER COMPANY, a Corporation, Respondent, *v.* L. COBURN and S. S. UPTON, Appellants.

QUIETING TITLE TO EASEMENTS—CONTRACT FOR SALE OF TIMBER—JUDGMENT TOO BROAD—REVERSAL.—In an action by the assignee of easements for a wagon road and sawmill on lands of the defendants and to cut timber thereon and manufacture into lumber ties, posts, wood, etc., to quiet title thereto against defendants, in which it appears that the rights of the parties are fixed by two contracts, the evident object of which is to sell the timber for fixed prices for stumpage, and to secure payment therefor out of the proceeds of sale, to the owners of the land, a judgment quieting the title of plaintiff only and estopping the defendants from any claim thereto or to any part thereof, and not establishing the legal rights of the defendants, is too broad, and must be reversed.

ID.—TIME FOR REMOVAL OF TIMBER UNEXPRESSED—REASONABLE DILIGENCE—DUTY OF COURT.—Where no express time is fixed by the terms of the contract for the cutting and removal of the timber for sale, the plaintiff, as assignee of the purchasers, cannot be allowed an indefinite time or forever to remove it, but reasonable diligence and good faith must be required, and it is the duty of the court to hear evidence and therefrom fix a time which would be fair and right.

ID.—UNDERSTANDING OF PARTIES TO BE ENFORCED—HARDSHIPS NOT CONSIDERED.—The understanding of the parties as to the rights of each under the contracts must be ascertained and enforced so as to protect the rights of all parties thereto. As to the hardships, advantages or disadvantages which may result to the parties from the proper construction of the contracts, this court has nothing to do.

It is the policy of the law to uphold and enforce contracts, regardless of the hardships that may be caused thereby.

ID.—DUTY OF COURT AS TO QUIETING TITLE.—The trial court should have quieted the title of plaintiff to the easement to build the wagon road, to erect and maintain the sawmill during the time necessary for plaintiff to remove the timber and products from the land, but for no longer time, and should have quieted the right of plaintiff to cut and remove the growing timber upon the lands, provided it kept its contract and paid the price fixed out of the products sold, and should have fixed the time within which plaintiff would be allowed to remove the timber.

ID.—RIGHT OF PLAINTIFF TO QUIET TITLE.—The owner of the right to cut the growing timber, and of the easements in connection therewith, has the right to maintain an action to quiet his title thereto.

APPEAL from a judgment of the Superior Court of San Mateo County, and from an order denying a new trial. George H. Buck, Judge.

The facts are stated in the opinion of the court.

Stanton L. Carter, for Appellant Coburn.

William Craig, and Craig & Craig, for Appellant Upton.

Jordan, Rowe & Brann, for Respondent.

COOPER, P. J.—The complaint alleged that plaintiff is the owner and in possession of a right of way to construct and operate a wagon road over the route described in the complaint across the lands of defendants; also the right to maintain a sawmill upon the lands of defendants adjacent to the described right of way; also the right to cut the growing timber situate upon the lands described in the complaint, and manufacture the same into lumber, railroad ties, posts, shingles, wood and other things; that the defendants claim some interest or rights in or to the said right of way, and the other rights claimed in the complaint, adverse to plaintiff, but that said claim of defendants is without right and wrongful. Judgment is prayed that defendants be compelled to set forth their claims; that such claims and rights may be determined, and that plaintiff's title be quieted as against defendants.

The defendants in their answer deny that plaintiff is, or ever was, the owner or in possession of the right of way described in the complaint, of the right to erect and maintain the sawmill, or of the right to take the timber and stumpage from defendants' lands. They admit that they claim an adverse interest in said alleged easements for the wagon road and to construct a sawmill, and in the alleged rights set forth in the complaint. They aver affirmatively that defendant Coburn is the owner ''in fee absolute of the lands designated in the complaint, and the plaintiff has no easement, right or interest therein.'' The pleadings are verified. The case was tried before the court, and at the conclusion of the evidence the court found that the plaintiff is the owner and in the possession of the right of way to construct a wagon road as set forth in the complaint, and of the right to construct, maintain and operate a sawmill upon the lands, and of the right to cut the timber and stumpage upon the said lands; that defendants claim an interest in and to the said right of way, the right to construct and maintain a sawmill, and the right to cut and manufacture the said growing timber. Judgment was accordingly entered ''that all adverse claims of the defendants and each of them, and all persons claiming or to claim said premises or any part thereof adversely to plaintiff's claims and rights as set forth in its complaint, through or under said defendants or either of them, are hereby adjudged and decreed invalid and groundless, and that plaintiff be, and it is hereby declared and adjudged to be, the true and lawful owner of all the property rights, privileges and benefits set forth and claimed in its complaint in and to the land hereinafter described, and every part and parcel thereof, and that the title of plaintiff thereto be and the same is hereby adjudged to be quieted against all claims, demands or pretensions of the defendants or either of them, who are hereby perpetually estopped from setting up any claims thereto or to any part thereof.''

Defendants made a motion for a new trial, which was denied and this appeal is from the judgment and the order denying the motion for a new trial.

It is claimed by the defendants that the judgment, which declares and adjudges that the plaintiff is the owner of all the

rights and privileges set forth in the complaint, the right to construct the wagon road, the right to construct and operate the sawmill, the right to cut and take off the timber from the lands described, and "that the title of plaintiff thereto be and the same is hereby adjudged to be quieted against all claims, demands or pretensions of the defendants or either of them, who are hereby *perpetually estopped* from setting up any claim thereto or to any part thereof," is too broad, and gives the plaintiff greater rights than are warranted by the evidence.

After careful consideration, we conclude that the contention of defendants in this regard is correct and must be sustained.

When the plaintiff sought the aid of a court of equity to prevent it from being harassed and annoyed by adverse claims to its easements and rights, it asked the court to protect and quiet its title against wrongful claims, and not against any legal rights of others. When it filed its complaint it asked that the alleged claims of defendants be adjudicated and determined. Thus all parties were before the court with their grievances and alleged rights and wrongs. The rights of the respective parties depended upon two certain contracts in writing, which it is necessary to set forth in order to fully understand the questions involved. The first one is as follows:

"This agreement entered into this 2nd day of October, in the year of our Lord one thousand nine hundred and one, in Pescadero, San Mateo County, State of California,

"By and Between Loren Coburn and Miss Sitara S. Upton, parties of the first part, of the town of Pescadero, County of San Mateo, State of California, and D. W. Grover and C. L. Littlefield, of the City of Santa Cruz, County of Santa Cruz, State of California, parties of the second part,

"WITNESSETH: Whereby the parties of the first part does by these presents agree to let the parties of the second part build a wagon road commencing on the Clark Ranch at a point at the mouth of the Gazos Gulch at the commencement of the woods of timber land on the Clark ranch, owned by Miss S. S. Upton; thence up the gulch going to and past the Gazos mill, now standing by the Gazos creek, up said gulch, and take and haul out from land of said Loren Coburn about forty thousand split railroad ties more or less, and sell said ties to the best advantage and highest price that said parties of the

second part can get for them, and take the proceeds of said sale and pay for building said wagon road before mentioned, and after paying for said wagon road to take what moneys there may be left and repair and put the sawmill standing on land of Loren Coburn in the Gazos creek gulch, in running order, build skid roads and start the mill up and go to sawing lumber. Said money received from sale of said railroad ties being money belonging to said Loren Coburn, and being used to improve the property of said Loren Coburn, and put it on a paying basis, viz., the following agreement, to wit, witnesseth:

"Whereby the parties of the first part being Loren Coburn and Miss S. S. Upton, do by these presents, bargain for themselves, their heirs and assigns, to sell to the parties of the second part, they being D. W. Grover and C. L. Littlefield, themselves, their heirs and assigns, the stumpage on all the land owned by them on the Gazos creek, being about four thousand acres more or less, all the timber, oak for wood, pine for wood, that won't make lumber, tan-bark and the tan-bark wood after the bark is peeled from the trees, redwood for wood that won't make lumber; also the timber used to make split railroad ties, split pickets, split posts, split shingles and sawed shingles, lumber measure in the following way, to wit: for clear and common lumber, one dollar per thousand feet, split ties, split posts, split pickets to be measured same as lumber by the thousand feet, split shakes, 1,000 feet lumber measure making 10,000 sawed shingles. The logs are to be scaled before sawing them at the mill, and the amount of feet sawed by scale measure to be kept on a book for that purpose. And the amount of feet sawed to be given to parties of the first part each and every week. The stumpage upon redwood and upon wood being 50 cents per cord, the stumpage on tan-bark being $2.50 per cord, the stumpage on oak wood and tan-bark oak wood being $1 per cord. The stumpage on all above named lumber wood, ties, posts, pickets, shakes, shingles to be paid for as fast as sold at Pigeon Point, where the lumber, posts, pickets, shakes, shingles and wood are to be for sale.

"It is further agreed by the parties of the first part, Loren Coburn and Miss S. S. Upton, and D. W. Grover and C. L. Littlefield, parties of the second part, that this agreement shall be in force from and after the signing of same by all parties aforesaid for a term of two years from October 2nd, 1901, to

October 2nd, 1903, with the privilege of a continuance of five years more from the expiration of the first two years.

(Signed) "LOREN COBURN,
"S. S. UPTON,
"D. W. GROVER,
"C. W. LITTLEFIELD."

The second writing was made the following April, and is as follows:

"This agreement made this 25th day of April, in the year of our Lord one thousand nine hundred and two, between Loren Coburn, of the town of Pescadero, County of Santa Cruz, in the State of California, party of the first part, and D. W. Grover and C. L. Littlefield, of the City of Santa Cruz, County of Santa Cruz, in the State of California, party of the second part,

"WITNESSETH: That the said party of the first part agrees to sell unto the said parties of the second part all the stumpage of all kinds for manufacturing purposes on his land in the County of Santa Cruz, Township 7 South, Range 4 West, Mount Diablo Meridian, on Sections 1, 25, 26, 32, 33, 34, 35, 36, at the prices agreed upon with the said parties of the second part, in an agreement before made, the said agreement being dated the 2nd day of October, in the year of our Lord one thousand nine hundred and one, and the said parties of the second part agree to buy the above said stumpage on the said land aforesaid, at the prices agreed upon on the said land above described in an agreement under date of October 2nd in the year of our Lord One thousand nine hundred and one. And this agreement shall hold good until the said stumpage shall all have been cut off of the said land before described.

"It is mutually agreed by and between the parties hereto that all the agreements and conditions hereof shall be binding upon the heirs, executors, administrators and assigns of the respective parties to the above agreement.

"IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year first above written.

(Signed) "LOREN COBURN,
"D. W. GROVER,
"C. L. LITTLEFIELD."

The plaintiff became the owner by purchase of the rights of Littlefield and Grover under these contracts, and no question is raised as to plaintiff being the owner of whatever rights Littlefield and Grover acquired by virtue of such contracts.

The latter agreement was signed and executed by defendant Coburn alone; but as defendants, in their verified answer, allege that defendant Coburn is the owner in fee of the lands described in the complaint, it probably was not necessary for defendant Upton to sign it. We must then take the two contracts together, and from them endeavor to arrive at the understanding of the parties so as to give to the plaintiff all its rights thereunder and at the same time protect the rights of defendants. As to the hardships, advantages or disadvantages which may result to the parties by the proper construction of the contracts, we have nothing to do. It is the policy of the law to uphold and enforce contracts as made by the parties, regardless of the hardships that may be caused thereby. In making contracts the parties deal at arms'-length, and if they are competent, in the absence of fraud, duress or mistake, they must abide by their contracts to which they have affixed their signatures if supported by sufficient consideration.

The evident object of the defendants in making the contracts was to sell, at the prices named, the growing timber and tan-bark on the lands described in the complaint, and get the money therefor. The object of Grover and Littlefield was to secure the said growing timber and tan-bark for the purpose of manufacturing the same, and for the purpose of making a profit on it after paying the stumpage and the expenses of manufacturing it. In order to manufacture the trees into lumber it was necessary that Grover and Littlefield should have the right to build a sawmill upon the lands. In order to get the timber, wood and tan-bark to the sawmill, or off the land to the market, it was necessary to have the wagon road. Defendants, in order to sell the timber and tan-bark, were willing to, and did, give the right of way and the right to build the sawmill, and the right of ingress and egress for the purpose of taking off the timber. The right of way was given in consideration with, and for the purposes of, the contracts, and for no other purpose; and so of the right to

allow the sawmill to be erected and maintained. The sawmill was to be for the sawing of the timber on the tract of land described; the wagon road was to be for hauling the lumber, tan-bark and products off the land, and for purposes in connection therewith. The agreements taken together constituted a sale of the timber. The price was fixed. Payments were to be made as the lumber and manufactured products were sold. The first agreement provided that it should be in force for two years, with the privilege of a further continuance for five years additional. The second or supplemental agreement provided for the sale of all the stumpage, particularly described the land, and provided that the prices should be the same as in the first agreement, and contained a clause that "this agreement shall hold good until the said stumpage shall all have been cut off said land before described." Although no time is fixed by the latter agreement within which the timber must be cut and removed, it is not reasonable to allow the parties purchasing the timber an indefinite time or forever to remove it. It must be presumed that the parties intended to act in good faith with each other; that the purchasers of the timber would proceed to erect a sawmill, build the road, manufacture the timber, posts, shingles, tan-bark and other products with reasonable diligence considering all the circumstances. It must also be presumed that it was intended that the products should be marketed with reasonable diligence, and the stumpage paid as the sales were made, or at regular reasonable intervals of time. The title to the timber, when severed from the land and manufactured, is to pass by the terms of the contract to the plaintiff; but, on the other hand, the plaintiff must give to the defendants an account of the lumber sawed each week as provided in the contracts.

The trial court should have quieted the title of plaintiff to the easement to build a wagon road, to erect a sawmill, for and during the time necessary for plaintiff to remove the timber and products from the land, but for no longer time. It was never intended by defendants to give these easements forever, or for any other purposes than in connection with removing the timber.

The court should also have quieted the title and the right of plaintiff to cut and manufacture the growing timber upon

the lands, provided it kept its contract and paid for the products as sold; but it should have heard evidence, and in view of such evidence, and what is fair and right, should have fixed the time within which the plaintiff would be allowed to remove the timber. It certainly would not be right or just or equitable· to allow the plaintiff to keep the timber bound up by the contracts, and thus prevent the defendants forever from selling it. In the meantime the defendants have to pay taxes on the land while the timber is continuing to grow and probably to increase in value. We are of opinion that the contracts, although inartificially drawn, are sufficiently certain to inform the court as to the intention of the parties. It is always the duty of courts to uphold and enforce contracts if it can be done under the rules as hereinbefore stated.

The findings in some respects are not supported by the evidence. The plaintiff is not the owner of the right of way described therein except for and in connection with the objects and purposes of the contract. Nor is it the owner of the right to erect and maintain a sawmill except for the purposes of sawing the timber off the land. Nor is it the owner forever of the right to the timber growing upon said lands.

It is claimed that the plaintiff has no right to maintain an action to quiet its title, for the alleged reason that under a conveyance of standing timber, to be removed, the timber in contemplation of law is to be treated as severed from the land, and therefore converted into personal property. It is not necessary to decide the question as to the status of plaintiff's title to the growing timber as to whether or not it is to be treated as personal property. While it is yet upon the land of defendants, the plaintiff has the right to have it remain there, supported and nourished by the soil, until it has reasonable time to remove it. It has the right of way for a wagon road. It has an easement for the purpose of building and maintaining its sawmill. It has a right to go upon and over the defendants' lands for the purpose of removing the timber, wood and tan-bark. The defendants claim an adverse estate or interest in and to all those rights, which is an adverse estate or interest in and to real property.

In *Peterson* v. *Gibbs*, 147 Cal. 1, [109 Am. St. Rep. 107, 81 Pac. 121], the plaintiff, as owner of the fee, was held to be

entitled to maintain an action to quiet his title against the defendant, who had a right to cut and remove the timber under a contract made with plaintiff's predecessor, and to have the adverse claim of defendant defined and determined by the judgment.    It was there said that under section 738, Code of Civil Procedure, it was intended in such action "that the court shall declare and define the interest held by the defendant, so that the plaintiff may have a decree finally adjudicating the extent of his own interest in the property in controversy.    The object of the action is to finally settle and determine as between the parties all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to."

On the same principle the owner of the right to cut the growing timber, and easements in connection therewith, has the right to maintain the action to quiet his title.

The judgment and order are reversed, and the cause remanded for further proceedings in accordance with this opinion.

Kerrigan, J., and Hall, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 18, 1908, and the following opinion was then rendered thereon:

THE COURT.—The application for hearing in this court after decision by the district court of appeal for the first district is denied.

One of the principal grounds of petition for rehearing is that the order remanding the action for further proceedings is not sufficiently definite.    We think that under a proper construction of the order of the appellate court the parties are not precluded from amending the pleadings as they may be advised, or from trying any and all issues that may be made by the pleadings as amended.