[S. F. No. 7286. Department Two.—June 11, 1917.]

D. GHIRARDELLI & COMPANY (a Corporation), Respondent, v. STUDENTS' EXPRESS AND TRANSFER COMPANY (a Corporation), et al., Appellants.

LEASE—WALL LEASED FOR ADVERTISING PURPOSES—OFFER OF RESCISSION AND SURRENDER.—The owner of a building leased the dead wall thereof for advertising purposes for a period of five years, in consideration of the painting by the lessee of the lessor's sign thereon free of charge. The lease contained a privilege of renewal for a like consideration from year to year, not to exceed five years. After the

expiration of a year, the lessor wrote requesting the lessee to repaint the lessor's sign, to which the lessee replied that it had discontinued outdoor sign painting and did not care to take advantage of its privilege of renewing the space leased. *Held*, that the lessor was justified in treating the reply as an offer of rescission and surrender of the lease.

APPEAL from a judgment of the Superior Court of Alameda County. Everett J. Brown, Judge.

The facts are stated in the opinion of the court.

St. Sure, Rose & Callaghan, for Appellants.

McDonald & Kennedy, for Respondent.

HENSHAW, J.—The Students' Express and Transfer Company leased the dead wall of its building to the Diamond Rubber Company under a writing which declared, "In consideration of painting my sign on building as agreed free of charge value $40 I hereby lease to undersigned, lessee," the wall of building located, etc., "for advertising purposes for a period of five years from date with privilege to said lessee to further use said space for a like consideration from year to year, not however to exceed five years." The Diamond Rubber Company then upon this wall painted the advertising sign of the Transfer Company and its own advertising sign. This was in the latter part of 1911. In February, 1913, the Transfer Company wrote to the Diamond Rubber Company as follows: "We hold your company's contract covering the painting of our warehouse in exchange for use of a certain portion of its side for advertising purposes. As the first and only work was done over a year ago we should be glad to have the work repeated before our busy season commences." The work referred to is admittedly the work of repainting the advertising sign of the Express Company. To this letter the Diamond Rubber Company made prompt reply as follows: "We are in receipt of your communication of the 20th inst., and would advise that on instructions from our factory we are discontinuing outdoor sign painting. Consequently we do not care to take advantage of our privilege of renewing the space leased from you last spring." The Transfer Company treated this as an offer of rescission and surrender of the lease and in the following month made a new lease of this

wall space to the Thos. H. B. Varney Company, a corporation engaged in the business of painting advertising signs. The Varney Company immediately took possession of the wall, repainted the Transfer Company's sign, painted out the Diamond Rubber Company's sign and in its place painted the advertising sign of one of its patrons. These signs stood undisturbed from May 1, 1913, to February 26, 1914, though the Diamond Rubber Company was well aware of the change. On January 10, 1914, Whitehead, the agent of the Diamond Rubber Company, made a purported assignment of its lease to one Potter, who himself had executed the lease of the Transfer Company in the name and on behalf of the Diamond Rubber Company. Potter was in fact engaged in sign painting. He in turn assigned this lease to plaintiff and under instruction of the plaintiff corporation he painted out the sign which the Varney Company had placed on the wall and painted thereon the sign of the plaintiff corporation. The Varney Company in turn painted out the Ghirardelli sign and replaced the earlier one. The Ghirardelli Company next painted out the Varney Company's sign and replaced its own, and then commenced this action for an injunction. The court found in favor of the plaintiff, assessed its damages in the sum of $75, and granted it the perpetual injunction prayed for. From that judgment this appeal is taken.

The underlying question turns on the true construction of the lease, and on the legal effect of the action of the Rubber Company and of the Transfer Company as evidenced by their writings, and herein it clearly appears that the Transfer Company construed its written lease and its language, "painting my sign on building *as agreed* free of charge," and its further language, "with privilege to said lessee to further use said space *for a like consideration from year to year*," to mean that the Diamond Rubber Company covenanted to repaint the Transfer Company's sign either every year or at least so often as the wear of the weather made this necessary. This is clearly evidenced by its letter above quoted, which in courteous language demands the repainting of its sign and is supported by the language of the renewal clause—"a like consideration from year to year." It is noteworthy that the Diamond Rubber Company in its reply does not repudiate this construction nor deny the obligation which the Transfer Company asserted it had accepted

with the lease, but merely declared that the company "had discontinued outdoor sign painting." and that "consequently we do not care to take advantage of our privilege of renewing the space leased from you last spring." Nothing is of more value in the construction of a written contract inartificially phrased than to learn the understanding which was given to it and acted upon by both parties, and here we have that accepted construction in unquestionable terms. Whatever ambiguity may be found in the original contract is cleared in this interchange of letters. Thus, the Transfer Company was quite justified in concluding that the Rubber Company desired to rescind and surrender its lease, and the language of its letter to the effect that it did not care to take advantage "of our privilege of renewing the space leased from you last spring" was a construction by the Rubber Company of the lease as meaning that their privilege of maintaining their wall space was dependent upon their repainting the Transfer Company's sign. Hence, that company was warranted in accepting this offer of rescission and evidencing that acceptance as it did by making a new lease to the Varney Company. Afterward, when the Rubber Company was advised of this and was about to make its assignment, knowing that its own sign had been obliterated, it wrote to the Transfer Company as follows: "If you will refer to our lease, you will find that we had already paid for a five-year lease and reserved the privilege of renewing the lease for a further five years, if we desired. We did not mean by our letter of February 24th [above quoted] that we did not want our sign to remain for the period that our lease had been paid up for." But the disingenuousness of this becomes apparent from the fact that the Diamond Rubber Company never made any effort to have its sign replaced but assigned its interest to plaintiff, who caused to be put there with its knowledge an entirely different sign. Moreover, this letter is of no legal efficacy, since it is simply a letter attempting to change the effect of a writing which the Transfer Company had accepted and acted upon. The Diamond Rubber Company's last position is that it only meant that it did not "care to take advantage of our privilege *of renewing* the space" after the termination of the five years. On its face this is an untenable, if not a ridiculous, construction, since its original lease (as it later attempted to construe it) was to continue for five

years and it was not incumbent upon it then or thereafter to give notice that it did not desire a renewal, while, finally, it may be added that even if this belated construction contended for by the Rubber Company be accepted, nevertheless there remains its repudiated duty to repaint the sign of the Transfer Company, in its refusal to do which it violated its lease.

It follows herefrom that the court's findings, based upon its construction of these writings, are untenable, and the judgment appealed from is therefore reversed.

Melvin, J., and Lorigan, J., concurred.