[L. A. No. 4058. Department Two.—January 15, 1918.]

## FIRST NATIONAL BANK OF REDONDO (a Corporation), Respondent, v. A. G. SPALDING, Appellant.

GUARANTY—PAROL EVIDENCE—INTENT.—Contracts of guaranty may not be varied by parol, but the circumstances of their execution may be considered in learning the intent of the guarantor.

ID.—RULE OF CONSTRUCTION.—A contract of guaranty should not be construed with nice and technical care, but with the main object of effectuating the intention of the parties.

Id.—Guaranty of Separate Notes—Exoneration of One.—Where a guarantor by a single written instrument guarantees the payment of four separate promissory notes, his exoneration from liability on one of the notes, by the substitution therefor of a new and unauthorized note, does not release him from liability on the remaining three notes.

Id.—Alteration of Instrument—Change in Date of Guaranteed Note.—Where a written, instrument guarantees the payment of four separate notes, the dates and amounts of which were set forth in a list in the written guarantee, and the guarantor expressly authorized the granting of time to the maker of each note, and agreed that such extensions should not affect his liability, the taking of a note of a date later than that expressed in the list set forth in the guaranty, had exactly the same effect as a renewal note and, the guarantor not being injured by such act, his liability was unaffected.

APPEAL from a judgment of the Superior Court of San Diego County. W. A. Sloane, Judge.

The facts are stated in the opinion of the court.

Riley & Heskett, for Appellant.

Allen & Weyl, and Sam Ferry Smith, for Respondent.

MELVIN, J.—A. G. Spalding appealed from a judgment whereby he was held liable upon a contract of guaranty regarding two of four certain notes therein specified. Pending appeal Mr. Spalding died and the executrix of his last will, Elizabeth Churchill Spalding, has been substituted as appellant.

It appears from the evidence that C. L. Hyde and Jess Knight were the managing stockholders of a corporation known as Knight and Hyde Mining Company. They applied to the president of the respondent corporation for a loan. He refused to loan money upon the note of the corporation, but agreed to furnish credit up to ten thousand dollars upon the execution and delivery of four notes, for two thousand five hundred dollars each, signed respectively by C. L. Hyde, Jess Knight, Mary Hyde, and Lillie J. Knight (the two latter being the wives respectively of the men of like surnames), provided A. G. Spalding would guarantee the payment of these obligations. The consideration for these notes was not

to pass to the makers but to the Mining Company. Mr.
Spalding was interested in the success of the Mining Com-
pany,—whether as a stockholder or a pledgee of stock as col-
lateral for loans does not clearly appear. The cashier of
respondent bank prepared four notes and a contract of
guaranty. These were taken to San Diego from Redondo
and the last-named instrument was signed by Mr. Spalding.
There is a conflict of testimony regarding the question
whether or not he inspected copies of the notes before signing
the said contract, but it is conceded by appellant that under
our rule we must assume the court's decision upon this matter
was an adoption of the testimony to the effect that he did
examine the copies. The notes and guaranty all bore date
of December 24, 1909. The guaranty was as follows:

"Redondo, Cal., Dec. 24, 1909.

"For value received, I hereby guarantee to First National
Bank of Redondo, California, the payment of certain promis-
sory notes amounting to Ten Thousand dollars ($10,000.00)
in favor of the First National Bank of Redondo, California,
signed by the following persons, to wit:

"Jess Knight .............$2500.00
"C. L. Hyde .............. 2500.00
"Lillie J. Knight ........... 2500.00
"Mary Hyde .............. 2500.00

"Due one day after date and bearing interest at the rate
of eight (8) per cent per annum, with all costs of collection
including reasonable attorney's fees, and authorize exten-
sions of time to maker, and same shall not affect my liability.

"Demand, notice of nonpayment and protest waived.

"A. G. SPALDING."

Each note was a duplicate of the other three except the
signature, and was a promise to pay one day after date the
principal sum with interest at the rate of eight per cent per
annum from date until maturity, and from maturity at the
rate of one per cent per month. Each contained the follow-
ing sentence: "Should suit be commenced, or an attorney
employed, to enforce the payment of this note, I agree to
pay five per cent on amount unpaid as attorney's fees. Prin-
cipal and interest payable in gold coin of the United States."

The court found that on December 24, 1909, and prior to
the acceptance of the notes by plaintiff, Mr. Spalding guar-
anteed their payment; and that all of the notes except that

executed by Mr. Knight were after the date thereof delivered to and accepted by plaintiff. New notes were subsequently executed by Mary E. Hyde and Jess Knight, providing for ten per cent on the amount unpaid, instead of five per cent as in the originals, for attorney's fees, but as the judgment was in favor of defendant regarding the alleged guaranty of the payment of these two notes we need not be greatly concerned with them on this appeal.

It was found that the notes were deposited with the Knight and Hyde Mining Company after December 24, 1909, to be delivered by it to plaintiff with request that their dates be changed to correspond with the times when the consideration should pass from plaintiff to the Knight and Hyde Mining Company, and that pursuant to said request plaintiff altered the dates, the two notes involved in this appeal being redated as follows: The note signed by Lillie J. Knight January 13, 1910, and that signed by C. L. Hyde February 16, 1910. The court further found that the only authority or right for said alterations "so far as the defendant is concerned was and is the provision in said contract of guaranty wherein said defendant authorized the plaintiff to give the makers of said notes extension of time and that such extension should not affect his liability."

Appellant's first contention is that the notes described in the guaranty are not substantially the same as those actually executed. The guarantor specified notes bearing interest at eight per cent, but those actually signed being one-day notes, bore interest at eight per cent for only a day and thereafter at a higher rate. The notes specified a certain percentage of any unpaid balance as attorney's fee; the contract of guaranty a "reasonable" fee. The notes provide for payment in gold coin of the United States, while the guaranty does not so specify. Further, appellant interprets the contract as applying to the four notes as one obligation and not to each individually. Appellant insists that all of these differences are substantial and exonerate the guarantor.

None of these objections is valid. While it is true that contracts of this sort may not be varied by parol, it is always competent, nevertheless, to consider the circumstances of their execution in learning the intent of the guarantor. The fact that Mr. Spalding had copies of these very notes before him when he signed the contract of guaranty makes this just

the sort of an agreement that we would have to interpret if the guaranty were indorsed upon the notes themselves. The contract referred in terms to the notes. It did not purport to set them out in all of their parts, the language clearly being not designed to limit the scope of the guaranty but to describe the notes. The guaranty should not be construed separately from the notes, but the instruments should be read together in the light of surrounding circumstances so that the true intention of the parties may be ascertained. (Civ. Code, secs. 1642, 1647; *First Nat. Bank of Redlands* v. *Bowers,* 141 Cal. 253, [74 Pac. 856]; *Howland* v. *Aitch,* 38 Cal. 133; *Burnett* v. *Piercy,* 149 Cal. 178–189, [86 Pac. 603]; *Otis* v. *Haseltine,* 27 Cal. 81; *Hazeltine* v. *Larco,* 7 Cal. 32; *Bagley* v. *Cohen,* 121 Cal. 604, [53 Pac. 1117]; *Gagan* v. *Stevens,* 4 Utah, 348, [9 Pac. 706].) In *First National Bank* v. *Bowers, supra,* the rule of interpretation was thus stated by Mr. Justice Lorigan, who wrote the opinion of the court: "Contracts of guaranty are not affected by rules different from those employed in construing other contracts, but like all other contracts, should receive a fair and liberal interpretation, according to the true import of their language, and may be explained by reference to the circumstances under which they are made and the matter to which they relate. (Civ. Code, sec. 1647.) 'As guaranties are contracts of extensive use in the commercial world, upon the faith of which large credits and advances are made, care should be taken to hold the party bound to the full extent of what appears to be his engagement. Letters of guaranty are commercial instruments, generally drawn up by merchants, sometimes inartificial and often loose in their structure and form. They should not, therefore, be construed with nice and technical care; but, according to the facts and circumstances accompanying the transaction, holding in view as the main object to ascertain and effectuate the intentions of the parties. (2 Daniel on Negotiable Instruments, p. 791.)' " While it is true that a surety or guarantor may stand upon the strict terms of his contract, this means merely that his liability is not to be extended by implication beyond the express terms of the instrument in which his guaranty is contained. (*London and San Francisco Bank* v. *Parrott,* 125 Cal. 472, [73 Am. St. Rep. 64, 58 Pac. 164].) We are of the opinion that the guarantor was fully bound, notwith-

standing the failure of the separate writing signed by him, to specify the increased rate of interest, the proportion of the amount due which should be a "reasonable" fee, and the kind of money in which the notes should be paid. The remaining argument that the guarantor was released by the bank's failure to accept the first note executed by Mr. Knight has no force. Nothing in the contract indicates that he was to be entirely exonerated if his liability should be relieved to the extent of one-fourth thereof (as the court found it was), by the substitution of a new and unauthorized note containing a new obligation in place of the one originally signed by Mr. Knight.

The only other question requiring decision is whether or not the change in the date of the two notes signed by Mrs. Knight and Mr. Hyde amounted to such material alteration as to excuse the guarantor from performance of his expressed obligation. The authorization given by Mr. Spalding for extensions of time to the maker of each note, such extensions not to affect his liability, was in the broadest and most unequivocal language. If under it, new notes had been executed after the originals had been long in the possession of the plaintiff after delivery, he would have been in no position to complain, for it is well settled that the taking of a renewal note does not exempt the principal or the guarantor except upon agreement that such will be the effect of the new writing. (*London and San Francisco Bank* v. *Parrott, supra; Brown* v. *Olmsted,* 50 Cal. 162; *Savings Bank* v. *Central Market Co.,* 122 Cal. 28, [54 Pac. 273]; *Comptoir D'Escompte* v. *Dresbach,* 78 Cal. 15, [20 Pac. 28].) The change of the dates at the time of legal delivery had exactly the same effect as the making of renewal notes and the guarantor could not be injured by such act. There is no pretense that the alterations were fraudulent or made for any purpose other than postponing the running of interest on each note to the true date of the passing of the consideration. The alteration of an instrument to make it correspond to the intention of the parties does not vitiate it. A change in an instrument honestly made to effectuate the design of the parties by giving expression to it does not destroy the force of the writing. (Daniel on Negotiable Instruments, sec. 1403; *Sill* v. *Reese,* 47 Cal. 294-348; *Osborn* v. *Hall,* 160 Ind. 153, [66 N. E. 457]; *McRaven* v. *Crisler,* 53 Miss. 542.)

It is contended that because under the finding of the court the only authority for the change in the dates was that given by the terms of the contract of guaranty, we may not gather any implied consent to the alteration from the other parts of the transaction from which it appears that the purpose of the guaranty was to secure credit at the bank for the Mining Company for the benefit of all the parties concerned, including Mr. Spalding. Conceding this point for the sake of argument, we are nevertheless of the opinion that the finding supports the judgment. The expressed consent to extensions of time did not specify when nor the manner in which those extensions were to be made, and while the method adopted is not to be highly commended, its use was no more injurious to the guarantor than a more orderly procedure would have been.

No other matters discussed in the briefs require analysis or comment.

The judgment is affirmed.

Wilbur, J., and Victor E. Shaw, J., *pro tem.*, concurred.