[Civ. No. 1867.     Third Appellate District.—December 11, 1918.]

## LEON H. FAIRCHILD, Respondent, v. GEORGE W. CART-WRIGHT, Appellant.

CONTRACT—CLAIM AGAINST CORPORATION—PERSONAL PROMISE OF OFFI-CER TO PAY — CONSIDERATION.—An agreement on the part of an individual holding a claim against a corporation to accept from its president and one of its directors a lesser amount, constitutes a sufficient consideration to support the promise of such official to personally make the payment.

ID.—STATUTE OF FRAUDS.—In view of the provisions of subdivision 3 of section 2794 of the Civil Code, such an agreement is not re-quired to be in writing.

APPEAL from a judgment of the Superior Court of Sacramento County.   Charles O. Busick, Judge.   Affirmed.

The facts are stated in the opinion of the court.

J. M. Inman and W. T. Phipps for Appellant.

Charles B. Harris and L. M. Shelley for Respondent.

BURNETT, J.—This is an appeal from a judgment of the superior court of the county of Sacramento, sitting without a jury, in favor of plaintiff and respondent for the sum of two thousand one hundred dollars, with interest from June 1, 1913, at the rate of seven per cent per annum, amounting to $502.25, and for costs in the sum of $42.

Appellant specifies as causes for said appeal that the evi-dence adduced at said trial does not justify the said findings of fact and conclusions of law in four particulars, namely:

1. That said alleged agreement to pay is in contravention of the statute of frauds; 2. That said alleged agreement to pay is without consideration and void; 3. That said alleged agreement to pay was canceled and rescinded by mutual consent of the parties thereto; and 4. That defendant's counterclaim should have been allowed in full.

A brief summary of the salient facts will suffice to show the nature of the controversy. It appears generally that an insurance corporation, known as the Pacific National Fire Insurance Company, was organized, having as an adjunct another corporation, called the Pacific States Holding Company. While the relation of these two companies does not very clearly appear from the record, it is reasonable to assume from the evidence that the purpose of the former corporation was the transaction of a general fire insurance business, while the function of the latter, as evidenced by its name, was the holding and handling of the corporate shares of the Fire Insurance Company.

Preliminarily, we may say that plaintiff sustained certain relations to said Pacific States Holding Company, either as its agent or employee, but such relations are not clearly indicated in the record. He further appears from the evidence to have been a promoter, stock salesman, and broker of corporate securities, and at various times engaged in interesting investors in the purchase of such collateral. Indeed, his resourcefulness in such capacity is evidenced from the correspondence with the defendant, wherein he communicates the various "deals" he is on the verge of consummating and, possibly, might have succeeded in effecting but for the failure to receive from defendant the unpaid balance, sued upon and made the basis of this action. However, no claim is made for such remote and speculative profits.

We may add that defendant, during the years 1912 and 1913, was president and director of said Pacific National Fire Insurance Company, and it is admitted by appellant in his brief that the parent corporation and its holding company had some business relations. It also appears from the evidence that said defendant was a man well and favorably known in state and financial circles, and that he intended to lend his recognized ability and financial resources to quite an extent in the promotion, and we may easily infer, to the salva-

tion of the Insurance Company's affairs, which were threatened with disaster. In the early part of defendant's administration of the affairs of the Insurance Company the prospects seemed roseate and alluring, and in his exuberant expectation of success, appellant resolved to make the business of the company his life work. At this time he was apparently willing to become personally responsible for the payment of plaintiff's claim. Afterward, as the business declined, his attitude toward plaintiff's claim naturally changed.

There is sufficient evidence in the record to justify the conclusion that respondent had a contract with the Holding Company for the payment of a large sum of money, which the directors of the Insurance Company considered themselves obligated to pay; that it was agreed that this contract should be rescinded and said directors would give respondent a written contract for the payment of some seven thousand dollars and guaranteeing him the privilege of selling for many years the stock of the company on a percentage basis; that the said directors declined to carry out their agreement and respondent insisted that his old agreement was still in force; that to compromise and settle this claim appellant promised to pay respondent the sum of six thousand dollars, three thousand dollars down, and the balance in sixty or ninety days, and that respondent accepted the agreement in satisfaction of all claims against the company or its directors.

There can be no doubt as to the sufficiency of the showing that appellant promised to be primarily responsible for the payment of said sum. Mr. Clarence E. Peters, an attorney at law, and apparently a disinterested witness, testified that he was present when the matter was discussed by the parties, and "Senator Cartwright said that he had been up in Humboldt County soliciting stock subscriptions for the company, and that in exchange for stock subscriptions he had taken a number of promissory notes in payment of stock, but that these notes would not be paid until fall or about the first of November and that some time in November, or early, or before the middle of November, the money would come in, the money owed him, he would then receive it and he would pay Mr. Fairchild in November, which was about six or seven weeks subsequent to the time. . . . He said that he had invested his entire private fortune, in the sum of about eighty thousand dollars, in the company; that he was president of the com-

pany, and desired to see it a success, and that he was giving it his entire attention and intended to make it his life work. . . . He said that he was under no legal obligation to the company to pay this debt, but he desired to see the company a success, therefore he had personally assumed the obligation to pay Mr. Fairchild, and desired to see it paid.'' It may be added that plaintiff testified that defendant promised unequivocally to pay the money.

As to the law of the case there would seem to be no obstacle to the enforcement of the contract. The appellant wanted to avoid trouble, lawsuits, and unenviable notoriety in reference to the company in which he had such an interest, and the consideration was therefore beneficial to him. (*Burr* v. *Cross,* 3 Cal. App. 416, [86 Pac. 424].) The compromise of even a doubtful right is a sufficient foundation for a promise to pay money. (*Gardner* v. *Watson,* 170 Cal. 575, [150 Pac. 994].)

Where there is a valid consideration the law will not attempt to measure the amount thereof. (*Whelan* v. *Swain,* 132 Cal. 389, [64 Pac. 560].)

The credit of a corporation, especially one dealing in matters of such public concern as fire insurance, is exceedingly sensitive to criticism of its management and is likely to be greatly affected by the exposition of the inner secrets of its creation, such as the agreement among the directors and promoters to collect and divide among themselves a large portion of the amount subscribed by the stockholders, and it may be that appellant had this in mind when he promised to pay six thousand dollars for an asserted claim of some twenty thousand dollars. At any rate, there was sufficient consideration to support the promise.

It is also true that such contract is not required to be in writing, as it comes within the terms of subdivision 3 of section 2794 of the Civil Code providing: ''A promise to answer for the obligation of another, in any of the following cases, is deemed an original obligation of the promisor, and need not be in writing. . . . 3. Where the promise, being for an antecedent obligation of another, is made upon the consideration that the party receiving it cancels the antecedent obligation, accepting the new promise as a substitute therefor . . . or upon a consideration beneficial to the promisor, whether moving from either party to the antecedent obligation, or from another person.''

However, respondent alleged in his complaint that the defendant "promised and agreed *in writing* to pay plaintiff the sum of six thousand dollars." The finding of the court was, also, that he so agreed to pay the said amount and that there was no such verbal agreement. It becomes important, therefore, to inquire as to the alleged *written* agreement. As to the fact itself we may first observe that there was no specific denial in the answer that a written promise was made by appellant to pay said sum. The only denial was that he made such promise "for a valuable or for any consideration." For a further defense, appellant alleged "That heretofore, to wit, on or about February 25th, 1913, said defendant, without any consideration to him moving from plaintiff, promised and guaranteed that he, defendant, *would* pay to plaintiff the sum of six thousand dollars as the amount of an indebtedness which plaintiff then claimed had long since been due and owing to him from persons other than plaintiff, and of which defendant owed no part; and thereafter, to wit, on or about the —— day of ——, 1913, said defendant in pursuance of said promise and attempted guaranty paid to plaintiff the sum of $3900, to be applied on account of said six thousand dollar indebtedness." Plaintiff might well have relied upon the admission as to the contract being in writing, but the trial seems to have proceeded upon the theory that there was such an issue, and the correspondence of the parties and certain parol evidence in reference to the claim were admitted without objection. As to this, however, it may be added that, since appellant among his four specified grounds of the insufficiency of the evidence has not claimed or designated a failure to prove that a written promise was made by him, we would probably be justified in paying no further attention to said correspondence. Nevertheless, we have read carefully the letters, and while they might reasonably be construed as embodying a conditional promise to pay the money or to guarantee its payment, dependent upon collection from subscriptions to stock, or upon the ratification of the promise by the directors of the company, yet there are expressions therein clearly indicating the intention of appellant to be personally responsible for the payment of the claim, and since it was so understood and acted upon by respondent it is rather late to indulge in refinement as to the exact significance of certain somewhat indefinite phrases in the letters. At any rate, we

think it is not an unreasonable contention that thereby appellant promised to answer for the claim.

We may add that the conduct of the parties—which is, of course, a circumstance of moment where the written contract is of doubtful meaning—was strongly corroborative of respondent's position. In this connection we may refer to the fact that in part payment of the debt appellant gave his personal check for two thousand one hundred dollars to respondent, upon the lower left-hand corner of which was written these words: ''Compromise Agreement.'' Appellant also gave his personal check for nine hundred dollars and his promissory note for a certain sum to Mr. Meredith in part payment of the claim. In this correspondence in reference to the cancellation of the supposed contract between the plaintiff and defendant there seems to be, also, on the part of appellant a recognition of his personal obligation.

Upon a consideration of the whole record, we think it cannot be said that there is no substantial support for the finding against appellant upon this issue. The other findings, including the questions of rescission and counterclaim, are supported and we think the judgment should be affirmed.

It is so ordered.

Chipman, P. J., and Hart, J., concurred.