[Civ. No. 10628. First Appellate District, Division One.—February 15, 1939.]

CHESTER N. WEAVER et al., Respondents, v. LEO P. GRUNBAUM et al., Appellants.

Pillsbury, Madison & Sutro, Marshall P. Madison and Gerald S. Levin for Appellants.

Cooley, Crowley & Supple and H. Rowan Gaither, Jr., for Respondents.

GEARY, J., *pro tem.*—On January 4, 1926, respondents Chester N. Weaver and Elsie S. Weaver, husband and wife, invested $40,000 in Merchants Security Company, a California corporation, and upon that date there was issued to each of them certificates for 200 shares of the preferred and for 200 shares of the common stock of said corporation. Appellant Grunbaum was president and appellant Parker was vice-president of said corporation. Thereafter, it was deemed advisable by those guiding the corporate affairs to effect a reorganization thereof. The plan of reorganization contemplated a disposal of certain assets of the company the proceeds therefrom to be used to take up the stock of the smaller stockholders. This would leave the corporation possessed of certain real estate situated in Oakland, Alameda County, as its sole asset, which was to be sold for the benefit of the

remaining stockholders. Respondents were loath to agree to the proposed reorganization. On December 19, 1928, for the purpose of securing their consent thereto appellants executed an agreement of indemnity prepared by respondent Chester N. Weaver, as follows:

"December 19, 1928.

"Chester N. Weaver & Elsie S. Weaver

"San Francisco, Cal.

"Inasmuch as this day you have signed a certain agreement as stockholders of the Merchants Security Company, consenting to a reorganization of the company and a division of assets, which reorganization and division is made to facilitate the handling of the business of the company; and inasmuch as there is some question in your mind as to this division, we jointly and severally agree to protect you against any loss on your invested capital on account of this division and reorganization.

"We recognize Chester N. Weaver and Elsie S. Weaver as each having invested in the Merchants Security Company $20,000, or a total of $40,000.

"If after a final sale of the real estate, which is the property of Merchants Security Company, there shall appear to be not enough assets in the company so you will realize the above mentioned $40,000 we jointly and severally agree to reimburse you for any loss that may occur, it being understood that we will use all efforts to dispose of the real estate in question as soon as possible.

"Respectfully yours,

"JOHN S. PARKER

"LEO P. GRUNBAUM."

Following the execution of the indemnity agreement respondents from time to time made inquiry of appellants regarding their progress in effecting a sale of the real property and were advised efforts to that end were being made. On April 22, 1931, the directors of Merchants Security Company sent out a letter to the stockholders advising that they believed they had a *bona fide* offer of $125,000 cash, for the remaining assets which would net the stockholders twenty-five cents on the dollar. The stockholders were requested to promptly advise what course they desired the directors

to take in the matter. Thereupon respondents wrote appellants as follows:

"April 22, 1931

"Messrs. L. P. Grunbaum and John S. Parker,

"Care Merchants Security Co., 142 Sansome Street, San Francisco, Cal.

"Gentlemen: I am in receipt of a circular letter dated April 22, 1931, addressed to the stockholders of the Merchants Security Company and signed by four of its directors.

"You will recall that you executed a guarantee under date of December 19, 1928, to Mrs. Weaver and myself in consideration of our agreeing to the reorganization of the company. We are of course relying upon that guarantee and do not care to take any action that may be considered a waiver of it. Therefore, if you will request that we send you a proxy and state in your request that the giving of the proxy shall not in any way affect your guarantee to us, we should be glad to send you a proxy or power of attorney, which will enable you to take such action as you see fit in connection with the matters set forth in the circular letter of April 22nd. Yours very truly."

Thereafter and in response to a letter (not in evidence) respondents wrote appellants as follows:

"San Francisco, April 27, 1931

"Mr. Leo P. Grunbaum & Mr. John S. Parker, Mercantile Acceptance Corporation, 142 Sansome Street, San Francisco, Cal.

"Gentlemen:

"I want to acknowledge receipt of your letter of the 24th inst. in regard to the offer on the property in Oakland, and under the circumstances I do not want to make any suggestion as to how the transaction should be handled, although I do not believe the offer represents the value of the property.

"Yours very truly
"CHESTER N. WEAVER"

The proposed sale was not consummated. Respondents thereafter made inquiry from time to time concerning the sale of the property and were informed that appellants were trying to dispose of it. Subsequently respondents were called upon to pay stock assessments totaling about $2,100 in order

to save the Oakland property from foreclosure. On or about February 1, 1936, respondents learned that the corporation was insolvent; that the real property was worth less than $200,000; that it was encumbered in sums in excess of $500,000; that neither taxes nor interest had been paid for over two years; that the monthly income from the property was some $1300 per month less than the costs and that appellants had abandoned all efforts to sell the same. Thereupon, on April 30, 1936, respondents instituted this action to recover their loss upon their stock under the indemnity agreement. The trial court found that the value of the remaining asset of the corporation was $162,500, and the mortgage indebtedness thereon $540,890.70; that respondents' stock was worthless; that appellants had represented to respondents from time to time that they were trying to effect a sale of the property and in January, 1936, respondents had learned for the first time that appellants had abandoned their efforts to sell the same. The court further found respondents had suffered a loss of $40,000 upon their stock which was covered by the indemnity agreement and for which they were entitled to recover and gave judgment accordingly.

Appellants assail the judgment upon the grounds:

That respondents failed to prove they suffered loss on their invested capital on account *of the division and reorganization* of the Merchants Security Company;

That the sale of the real property is a condition precedent to recovery under the terms of the indemnity agreement, and in the absence of such sale there is a total lack of proof of loss or damage to respondents;

That the action having been commenced more than five years from the last date when appellants made any efforts to sell the property, the action is barred by the provisions of Code of Civil Procedure, section 337;

That the evidence does not support certain of the findings.

■ Appellants assert the instrument sets forth in paragraph one, the primary terms of the indemnity, and the remaining paragraphs merely serve to define or limit the principal obligation of indemnity as contained in the first paragraph. Respondents, on the other hand, contend that paragraph one of the agreement is a mere recital of circum-

stances attending its execution and that the substantive terms are thereafter set forth. Unexplained, the agreement might be construed as supporting either contention without violating the plain import of the language used. A reading of the indemnity agreement readily reveals such ambiguity and uncertainty therein as requires a resort to fundamental rules of interpretation to ascertain the true intent of the parties. Evidence was properly received, therefore, of the situation of the parties and of the circumstances surrounding the execution of the agreement to enable the court to ascertain their true intent. (Civ. Code, sec. 1647; Code Civ. Proc., sec. 1860; *Balfour* v. *Fresno C. & I. Co.*, 109 Cal. 221, 225, 226 [41 Pac. 876]; *First Nat. Bank* v. *Bowers*, 141 Cal. 253, 262 [74 Pac. 856]; *Stein* v. *Archibald*, 151 Cal. 220, 223 [90 Pac. 536]; *Shelley* v. *Byers*, 73 Cal. App. 44, 55 [238 Pac. 177]; *Gilde* v. *Schuster*, 83 Cal. App. 537, 541 [257 Pac. 121].)

Before the indemnity agreement was executed respondents had made inquiry and learned that the value of the Oakland property was around $625,000; that it was mortgaged for an amount in excess of $400,000 and that the corporation claimed to have put over $400,000 into the property in addition to the mortgage. On December 19, 1928, when appellants called upon respondent Chester N. Weaver, they stated it was advisable from their standpoint to change the structure of the corporation. Respondent testified in connection with this meeting, "I didn't understand what the change was, and finally told Mr. Grunbaum, who was the principal in the matter and who did the talking, that I didn't know anything about it, that I bought the stock from him and if he would indemnify me in case of loss on the stock I would sign the paper, the agreement, and he agreed to do it." Respondent further testified without objection, ". . . I couldn't see where that [there] was at that time an equity in the property to take care of this stock. That is the reason I asked them to indemnify me and went no further into the matter." Respondent's testimony in this regard was not disputed.

Giving effect to each portion of the agreement as the law requires and the evidence herein warrants, the parties agreed in effect; in consideration of respondent's acquiescence in the reorganization plan whereby the Oakland property would

become the sole remaining asset and would be liquidated as soon as possible, the appellants would protect them against any loss upon their investment of $40,000 by reason thereof; and if after sale enough assets should not be available to repay respondents the $40,000 invested appellants would reimburse them to the extent of that sum.

It is apparent that the proposed reorganization of the corporation, mentioned in the agreement and as understood by the parties contemplated not only the elimination of the small stockholders and the disposal of all assets of the corporation except the Oakland property, but the sale of the latter as soon as possible. That respondents so construed the agreement and thereafter relied upon it as so construed, is evidenced by their letters above set forth, and the testimony of respondent Chester N. Weaver. Nor was their interpretation of the agreement disputed by appellants at any time prior to the filing of the action. Where the language of a contract is reasonably susceptible of more than one interpretation, evidence of the subsequent conduct of the parties thereunder is important in revealing to the court the construction which the parties themselves placed upon it. (*Woodard* v. *Glenwood Lumber Co.*, 171 Cal. 513, 521 [153 Pac. 951] ; *Ghirardelli* v. *Students' Express & Transfer Co.*, 175 Cal. 427, 429 [166 Pac. 16] ; *Fairchild* v. *Cartwright*, 39 Cal. App. 118, 123 [178 Pac. 333].) Nor is there evidence in the record warranting a different construction of the agreement by the trial court. In view of the total absence of testimony to the contrary in this regard, the judgment of the trial court as to the facts was proper and is binding upon this court. (*Woodard* v. *Glenwood Lumber Co., supra,* p. 519.) The appellants seriously contend that any ambiguity in the agreement must be construed against the parties responsible therefor, in this case respondents, as Chester N. Weaver prepared the agreement. (Civ. Code, sec. 1654.) However, since the rules of interpretation set forth in the preceding code sections when properly applied eliminate the uncertainty of the agreement, the provisions of the section mentioned have no application.

 The evidence herein conclusively establishes that Merchants Security Company is hopelessly insolvent. In so far as respondents are concerned their loss is definite and, by reason of the assessments paid by them, in excess of the sum

for which they were to be indemnified under the agreement. Under ordinary rules of interpreting indemnity agreements, unless a contrary intention appears, persons indemnified against claims, demands or damages are not entitled to recover without first paying the same. (Civ. Code, sec. 2778.) Such a rule is not applicable here, however, as the instrument itself expresses a contrary intent, and, if invoked, would nullify the entire purpose of the agreement. The agreement was that appellants would indemnify respondents for loss upon their investment, and no payment, as mentioned in the code, was required.

The evidence shows that in the spring of 1929 the Oakland property was listed for sale with three real estate brokers without result. Thereafter, no further efforts were made to sell the property. Appellant Parker testified in this regard: "Well, after I found out that I couldn't get an offer on the property (in the spring of 1929) then I quit, because I couldn't get enough out of it to satisfy the bank . . . I then quit, because you know the depression was on and there was no chance of realizing the amount of the mortgage at that time." Appellants were obligated to sell the property, or at least use "all efforts" to sell the same, and indemnify respondents for their loss, if any. They cannot avoid their obligation of payment to respondents by wilfully neglecting their obligation to use every effort to sell the property. Nor does the fact that their obligation to respondents was contingent upon a selling of the property and the inadequacy of the sum received therefor to protect respondents' investment, alter the situation. We are cited to the case of *Watchorn* v. *Roxana Petroleum Corp.*, 5 Fed. (2d) 636, 641, 642, in support of the contention that since appellants' obligations to respondents were contingent upon the sale of the real property, no liability could possibly be created until that event occurred. We have no quarrel with the rule therein enunciated; we hold, however, that it is not determinative of the question presented here. Every agreement to indemnify another is dependent upon the happening of some event or events before the indemnity is payable. Although the right to payment and the amount thereof are necessarily uncertain, such contracts and the duties of the parties thereunder are generally measurable by the same rules as apply to other contracts. (*First Nat. Bank* v.

*Spalding,* 177 Cal. 217, 221 [170 Pac. 407] ; citing *First Nat. Bank* v. *Bowers, supra*; 6 Cal. Jur. 247.) Appellants, cannot by their own admitted conduct prevent the performance of the first condition—the sale of the real property—and thus absolve themselves from their liability to make up the loss upon respondents' stock. (*Wallace* v. *Carlin,* 92 Cal. App. 31, 34 [267 Pac. 596] ; *Earle* v. *Sunnyside Land Co.,* 150 Cal. 214, 225, 226 [88 Pac. 920] ; *Taylor* v. *Simi Const. Co.,* 23 Cal. App. 308, 310 [137 Pac. 1095] ; *Rosenheim* v. *Howze,* 179 Cal. 309, 312 [176 Pac. 456] ; *Williston* v. *Perkins,* 51 Cal. 554, 555.) The law does not sanction the breach of a contract as a method of escape from its burdensome terms, nor will it reward the party in default.

Since the agreement is silent as to when the Oakland property should be sold, the law implies that appellants covenanted to effect the sale within a reasonable time. (Civ. Code, sec. 1657; *Gazos Creek Mill etc. Co.* v. *Coburn,* 8 Cal. App. 150, 158 [96 Pac. 359] ; *Wallace* v. *Carlin, supra*; *Earle* v. *Sunnyside Land Co., supra*; *Rapp* v. *Rapp,* 218 Cal. 505, 507, 508 [24 Pac. (2d) 161].) What constitutes a reasonable time is a question of law or fact, to be determined by the trial court from the evidence presented in each case. (*Giberson* v. *Fink,* 28 Cal. App. 25, 29, 38 [151 Pac. 371] ; *Greenberg* v. *California B. R. Co.,* 107 Cal. 667, 671 [40 Pac. 1053] ; *California W. D. Co.* v. *California M. O. Co.,* 178 Cal. 337, 341, 343 [177 Pac. 849] ; *Hoppin* v. *Munsey,* 185 Cal. 678, 684 [198 Pac. 398].) Appellants plead, and now assert that the action was commenced more than four years after they abandoned their efforts to sell the real property, hence that the action was barred by sections 337, 339 and 343, Code of Civil Procedure. The court expressly found that the action was not barred by the provisions of said code sections. There is evidence in the record to support the finding. Respondent Chester N. Weaver testified without objection that in conversations with appellants from time to time he was advised they were endeavoring to dispose of the property; that he learned they had abandoned their efforts in January, 1936. The testimony in this regard is slight, as counsel point out, yet the conversations are not denied. Furthermore, it was alleged in the complaint that five years was a reasonable time for appellants to effect a sale of the real property. There is some evidence in the record of conditions

affecting the sale of real estate in Oakland during the period in question. And even though there were no evidence upon this point, general business conditions throughout the country were so generally known and recognized that the court must be deemed to have had notice thereof. (*People* v. *Tossetti*, 107 Cal. App. 7, 13 [289 Pac. 881]; *San Francisco* v. *Collins*, 216 Cal. 187, 189 [13 Pac. (2d) 912].) The finding of the court that the action was not barred is a sufficient finding in this respect and supported by the evidence. (*Woodhead* v. *Wilkinson*, 181 Cal. 599, 602 [185 Pac. 851, 10 A. L. R. 291]; *Hertel* v. *Emireck*, 178 Cal. 534, 535 [174 Pac. 30]; *Hollenbach* v. *Schnabel*, 101 Cal. 312, 317 [35 Pac. 872, 40 Am. St. Rep. 57]; 24 Cal. Jur. 947.)

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 17, 1939, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 12, 1939. Langdon, J., and Edmonds, J., voted for a hearing.