**J. C. MILLETT CO., a corporation doing business as Key Distributing Co., Appellant,**

v.

**DISTILLERS DISTRIBUTING CORPORATION, Appellee.**

**No. 15480.**

United States Court of Appeals
Ninth Circuit.

June 10, 1958.

140

J. Albert Hutchinson, Leon A. Blum, San Francisco, Cal., for appellant.

Philip S. Ehrlich, Irving Rovens, San Francisco, Cal., for appellee.

Before DENMAN, POPE and FEE, Circuit Judges.

DENMAN, Circuit Judge.

Appellant, a wholesale distributor to retailers of alcoholic beverages in the State of California, hereafter Distributor, appeals from a judgment of the

District Court in a court-tried diversity suit denying it relief for three claimed breaches of a written contract it had with Calvert Distillers and Carstairs Brothers Distilling Corporation,[1] importers and manufacturers' agents for such beverages, hereafter Importer, and from the denial of Distributor's motion to amend the pleadings to conform to the proof of another violation of the contract.

The contract provides that its agreements shall be construed under the law of the State of California and the parties do not question that it is the applicable law.

A. *The contract provides that the Distributor was not the sole agent for the Importer in selling the alcoholic liquors to retailers in Alameda and Contra Costa Counties and Importer violated no agreement in soliciting orders for another distributor there.*

The provision of the agreement first alleged to be violated is paragraph 6 providing:

"6. Calvert agrees to promote the sales of its products and to advertise its products in a manner consistent with the type of merchandise and the cases sold. Calvert shall have the sole right to determine the amount of sales promotion and advertising and the media used for advertising."

The violation contended is that in the alcoholic beverages business the words "promote the sales" mean, inter alia, the employment by the Importer of so-called "specialty men" to solicit the business of retailers and thus promote distributors' businesses by enabling them to obtain orders. Of this the complaint alleges:

"On and after March 14th, 1952, when the said written agreement was executed between the parties hereto, the defendants did continue to employ such salesmen, and said salesmen continued to solicit and

obtain orders in purported support of the sales of defendants' products, but failed, neglected and refused to submit *all such orders* to the Key Distributing Co. for delivery, but submitted a substantial portion thereof to other competing wholesale distributors of defendants in the said two counties for delivery." [Emphasis supplied.]

■ It is obvious that this aid to other distributors violates clause 6 of the contract only if the plaintiff-appellant was the sole distributor of the Importer for the two counties. The contract cannot be given this interpretation.

The first provision of the contract makes the Distributor but one of the Importer's distributors of Importer's goods to retailers in Alameda and Contra Costa Counties of California in the following language:

"1. Calvert hereby appoints Distributor as *a* distributor of such of the alcoholic beverages produced by The Calvert Distilling Co., and Carstairs Bros. Distilling Co., Inc., as are listed on Exhibit A attached hereto within the following territory in the state of California, Alameda and Contra Costa Counties." [Emphasis supplied.]

The Distributor itself in its brief recognizes the use of the article "a" as distinguished from the article "the" which would have made it the sole distributor for the Importer in the following language:

"The stated and principal purposes [sic] of the contract was to provide for the appointment of plaintiff as *a* Calvert distributor in the Counties of Alameda and Contra Costa in the state, for the purchase by plaintiff for resale, from Calvert of the products of Calvert Distillers Co. and Carstairs Distilling Co., Inc., within said areas and to control the method of conducting these operations." [Emphasis supplied.]

---

1. These parties were merged into Distillers Distributing Corporation before this action was commenced.

**142**

While it is true that questions of doubt in the interpretation of the words of a written contract are resolved against the party which prepared it,[2] here the words of appointment "as *a* distributor" are exactly contrary to the words "as *the sole* distributor" as contended by the Distributor.

Paragraph 2 of the contract emphasizes that the first paragraph did not create appellant as the sole distributor. It provides that Distributor need give not more "than 23% of its time and effort in the sale of Calvert products nor spend more than 23% of its money in advertising and sales promotion of its products." It is irrational to suppose that the Importer would seek to expand its business in the million odd inhabitants of Oakland and Alameda Counties to a company that is to devote such a small part of its time, energy and funds to such a purpose. There is no error in the District Court's decision on this contention.

B. *The Distributor has not sustained its burden of proof that the Importer breached the contract by failure to supply a certain order.*

 For another cause of action the Distributor contends that the Importer breached the written contract by failure to deliver on a written purchase order dated December 15, 1952 for 900 cases of Calvert products. The Importer admits that it received the order and did not fill it but argues that the trial court was correct in its finding that there was no lawful requirement for the Importer to ship the 900 cases to the Distributor. The basis for this conclusion is the following clause of the contract:

"5. * * * Calvert reserves the right not to ship any orders received where such orders would result in an inventory in the hands of Distributor greater than a 45-day inventory, based on the rate of sales of Calvert products by Distributor for the six months prior to the date of this contract."

The difficulty with this contract provision is that there are two variable factors which prevent its accurate application. The first of these is the date upon which the inventory of the Distributor is tested. This is obviously the date of delivery of the ordered goods because of the wording "result in an inventory in the hands of Distributor." The date of delivery of a particular order is, of course, uncertain. The second variable occurs from the sales made by the Distributor between the date of the order and the date of its arrival. The amount of these sales is unknown at the time the Importer contemplates exercising its right not to supply the Distributor with over a 45-day stock.

The argument is made that the inventory figures as of the date of the Distributor's order were meant to be used by the parties in making the decision as to whether a 45-day inventory would be exceeded. This argument must be rejected because of the plain meaning of the clause and also because it would result in the contract being illusory and unenforceable. This last result follows from clause 8 of the contract which reads:

"Distributor agrees that it will maintain an inventory of Calvert products at all times equal to Distributor's average sales for 45 days."

If the Importer [Calvert] could refuse an order when at the date of the order the Distributor had more than a 45-day supply on hand and could at the same time consider the contract breached if *at any time* the distributor had less than a 45-day inventory on hand the contract is wholly one-sided, since it is evident that between the order date and the delivery date sales would be made which well could diminish the inventory below the required amount and thus Calvert could relieve itself of the obligations of the contract at its option. A construction making a contract illusory is not favored and we will not accept it if there is a reasonable alternative.[3]

2. Pacific Lbr. Co. v. Industrial Acc. Co., 22 Cal.2d 410, 419, 422, 139 P.2d 892.

3. Entremont v. Whitsell, 13 Cal.2d 290, 89 P.2d 392; Mebius & Dresher Co. v. Mills,

The reasonable alternative is that the Distributor's inventory on the date of the order be reduced by his projected sales "based on the rate of sales of Calvert products by Distributor for the six months prior to the date of [the] contract." As to the other variable, since the delivery date was not set by the order or the contract nor was any practice of the industry proved, we deem it to be, as we are required to do[4] a reasonable time considering the standard practice of the industry and the usual practice between these parties.

No evidence was introduced by the Distributor as to what period a reasonable time under these circumstances would be. As it had the burden of proof in this respect, Distributor must suffer the adverse inference that delivery was usually accomplished by the Importer within a matter of days and thus Importer was justified in its refusal to fill the order by the inventory figures of Distributor on December 15, 1952 shown to exceed a 45-day inventory by the answer to Interrogatory 21.[5]

**C.** *The refusal to renew the contract.*

For another cause of action the Distributor contends that the Importer breached the contract by failure to accept a valid and timely exercise of an option to renew the contract pursuant to the following provision:

"11. This contract shall be effective for a period of ten months from March 1, 1952. If Distributor desires to renew the contract, he shall so notify Calvert not less than 30 days before December 31st, 1952."

The Distributor on November 18, 1952, wrote to the Importer as follows:

"Gentlemen: Under the provisions of par. 11 of the existing contract between the Calvert Distillers Corporation and the Key Distributing Co., division of J. C. Millett Co., we hereby advise you that we have elected to exercise the option granted to us in that contract and to renew that contract commencing with its expiration date on December 31, 1952. That paragraph reads:" [As above.]

■■ Here is applicable the requirement that a question of doubt in interpreting a written contract is to be construed against the party preparing it. We think the doubt as to how the parties interpreted this provision should be

---

150 Cal. 229, 88 P. 917; Howard v. Adams, 16 Cal.2d 253, 105 P.2d 971, 130 A.L.R. 1003.

**4.** Shimmon v. Moore, 104 Cal.App.2d 554, 232 P.2d 22; Kersh v. Taber, 67 Cal. App.2d 499, 154 P.2d 934.

**5.** (a) (b) Plaintiff's Sales to Retailers (Cases)
September, 1951–February, 1952 [62]

| | Lord Calvert | Calvert Reserve | Calvert Gin |
|---|---|---|---|
| Sept. 1951 | 174 | 564 | 19 |
| Oct. 1951 | 250 | 1009 | 90 |
| Nov. 1951 | 147 | 469 | 14 |
| Dec. 1951 | 341 | 766 | 32 |
| Jan. 1952 | 206 | 409 | 20 |
| Feb. 1952 | 39 | 116 | 9 |
| | 1157 | 3333 | 184 |
| Average Monthly Sales | 193 | 555½ | 31 |
| 45 Day Inventory | 289½ | 833¼ | 46½ |
| Plaintiff's Invt. Dec. 15, 1952 | 242 | 893 | 87 |
| Plaintiff's Order Dated Dec. 15, 1952 | 100 | 775 | 25 |
| | 342 | 1668 | 112 |

resolved by the district court on their testimony and other evidence, if any, and it is so ordered.

D. *The court erred in refusing to amend to conform to proof that the Importer violated the contract by discouraging retailers from dealing with Distributor.*

[8] However, at the trial on a long and pressing examination, one of the Importer's ex-specialty men, who contacted retailers to advertise the Distributor's products, admitted that he was ordered by the Importer to discourage these retailers from placing orders with the Distributor. This evidence is uncontradicted. Such damaging action is a clear breach of paragraph 6 of the contract in which the agent agrees to "promote the sales of its products", a provision necessarily implying an agreement that the agent would not engage in activities hurtful to the Distributor.[6]

The Distributor moved for an amendment of paragraph IX of its complaint to conform to this proof which the court denied. We hold this was error. Fed. Rules Civil Procedure, rule 15(b), 28 U.S.C.A. so far as pertinent provides:

"If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so *freely* when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence." [Emphasis supplied.]

The rule itself says that it "shall" be "freely" applied and we have so held in United States v. Koike, 9 Cir., 164 F.2d 155, 157. Here the court was clearly in error.

The judgment is reversed. The complaint may be amended as to its paragraph XI and served on defendant and the cause proceed on this issue and on the interpretation of provision 11 of the contract.

6. See, e. g., Brown v. Superior Court, 34 Cal.2d 559, 212 P.2d 878.