J. C. MILLETT CO., a corporation, doing business as Key Distributing Co., Plaintiff,

v.

DISTILLERS DISTRIBUTING CORPORATION et al., Defendants.

Civ. No. 34034.

United States District Court
N. D. California, S. D.

Aug. 5, 1960.

J. Albert Hutchinson, Leon A. Blum, San Francisco, Cal., for plaintiff.

Philip S. Ehrlich, Irving Rovens, San Francisco, Cal., for defendants.

OLIVER J. CARTER, District Judge.

This case is before the Court on retrial after reversal and remand by the Court of Appeals for the Ninth Circuit, 258 F. 2d 139. The mandate provides:

"* * * the judgment of the said District Court in this cause be and hereby is reversed, * * * The complaint may be amended as to its paragraph IX and served on defendant and the cause proceed on this issue and on the interpretation of provision 11 of the contract."

The mandate returns two issues for further trial, all other issues having been resolved in favor of the defendant. The two issues are (1) whether there was a breach of contract under the first cause of action after the amendment of paragraph IX thereof, the damages for the breach, if any, and (2) whether there was a breach of contract under the third cause of action (whether the contract contained an option to renew) based on the interpretation of provision 11 of the contract and the damages for the breach, if any. These issues are to be determined in accordance with appropriate California law (258 F.2d 141).

The facts which outline the status of the parties, the nature of the action and background of the case are stated in the opinion of the Court of Appeals, supra, and will not be repeated except to the extent necessary to determine the questions presently before the Court. While there are several defendants named in the complaint, they are all merged into defendant, Distillers Distributing Corporation, and will hereafter be referred to as "defendant". As remanded by the Court of Appeals, these questions are mainly evidentiary in that the District Court is directed to resolve these questions upon a review of the evidence. The parties have stipulated

"* * * to submit the issues of fact in the cause upon the issues and questions of liability upon the following: (a) such oral analysis and argument as the Court may receive; (b) the exhibits heretofore received and marked in said action; (c) the testimony of the witnesses having testified at the first and second trials in said action as set forth in (1) the printed Transcript of Record of the first trial heretofore received in said action upon the second trial, and (2) testimony taken on the second trial as reported in Excerpts, Proceedings on Trial, July 29–30, 1959, heretofore prepared by the reporters of the Court in typewritten form, and (d) such further testimony of the witnesses having heretofore testified in said action as the Court shall direct;

"3. The issues of liability shall be determined upon the submission herein indicated and the issues of damages responsive to the determination of the Court of the issues and questions of liability shall be heard and tried as may be directed by the Court, upon such evidence as the respective parties may proffer, without restriction by reason of this stipulation."

On the issues thus submitted the Court is now prepared to determine the ques-

tions of liability and to reserve any questions as to damages for further hearing.

## I.

### The Issue of Liability Under the First Cause of Action as Amended.

Paragraph IX of the first cause of action was amended to conform to the proof and reads as follows:

"One of the provisions of the said written agreement, in paragraph 6 thereof, specified as follows:

"'Calvert agrees to promote the sales of its products and to advertise its products in a manner consistent with the type of merchandise and the cases sold * * *'

"Said provision was intended to, and did operate for the joint benefit of plaintiff and defendants in this, that it enabled plaintiff to make a substantial number of sales of defendants' products to plaintiff's customers. Pursuant to the said provision defendants did maintain such specialty men to promote sales and advertise its products in the counties of Alameda and Contra Costa wherein the said written agreement was operative, for the joint benefit of plaintiff and defendants, until on or about July 1, 1952. On said last named date, while the said written agreement was still in full force and effect, and without cause or provocation on the part of plaintiff, the defendants ceased and discontinued said promotion and advertising of its products for the joint benefit of plaintiff and defendants, but continued such promotion and advertising for the benefit of defendants and plaintiff's business competitors in said area, at the exclusion of plaintiff and in express violation of the terms of the said written agreement."

If the facts support this allegation this Court has no alternative but to conclude that defendant breached its contract with plaintiff as to the provisions of paragraph 6 of the contract, and is liable to plaintiff in damages therefor. The Court of Appeals said:

"However, at the trial on a long and pressing examination, one of the Importer's [defendant's] ex-specialty men, who contacted retailers to advertise the Distributor's [plaintiff's] products, admitted that he was ordered by the Importer to discourage these retailers from placing orders with the Distributor. This evidence is uncontradicted. Such damaging action is a clear breach of paragraph 6 of the contract in which the agent agrees to 'promote the sales of its products', a provision necessarily implying an agreement that the agent would not engage in activities hurtful to the Distributor." 258 F.2d 144.

At the second trial the defendant's ex-specialty man (Mr. Lewis) again admitted that he was ordered by the defendant to discourage these retailers from placing orders with the plaintiff. However, at this second trial the defendant put a Mr. Taub (the Division Manager for Calvert [defendant]) on the stand. Mr. Taub denied that he had ever instructed Mr. Lewis to withdraw promotional and sales support from plaintiff. Mr. Taub did not give any affirmative evidence but simply denied that he had given the instructions attributed to him by Mr. Lewis. Taub did not deny that defendant's specialty men did, in fact, injure plaintiff and assist its competitor, Juillard.

The Court finds that the testimony offered on behalf of plaintiff is more credible and that the weight of the evidence favors plaintiff. It is the Court's conclusion that the evidence sustains the allegations of the amended complaint, and that defendant breached paragraph 6 of the contract from July 1, 1952, to December 31, 1952. Plaintiff argues that the holding of the Court of Appeals establishes a breach of contract under the doctrine of "the law of the case". In view of this Court's holding that the weight of the evidence shows a

breach it is unnecessary to decide this point.

In accordance with the stipulation, the issue of the damages to be awarded to plaintiff by reason of this breach will be set down for further hearing at the convenience of the Court and the parties.

## II.

### The Issue of Liability Under the Third Cause of Action.

The third cause of action alleges a breach of contract in respect to paragraph 11 of the contract entered into March 14, 1952. This provision reads as follows:

"11. This contract shall be effective for a period of ten months from March 1, 1952. If Distributor desires to renew the contract, he shall so notify Calvert not less than 30 days before December 31st, 1952."

On November 18, 1952, while the said agreement was still in full force and effect, plaintiff elected to renew the contract and gave notice of such election to defendant. On January 26, 1953, defendant advised plaintiff that the said agreement was terminated and ended as of December 31, 1952, and would not be extended or renewed.

Plaintiff contends that the foregoing provision of the contract was intended by the parties thereto to mean, and was interpreted by the plaintiff to mean that in the event the said agreement was in full force and effect and plaintiff desired to renew and extend the said agreement it had an option to so extend and renew the same upon giving proper notice to defendant. Defendant contends that the disputed provision by the plain and un-ambiguous meaning of its language did not grant to plaintiff an option to renew, and, even if the language used is construed to be ambiguous, it should not be interpreted to grant an option to renew to plaintiff when it is interpreted in the light of the surrounding circumstances in which it was used.

In respect to the questioned provision the Court of Appeals in its opinion said:

"* * * Here is applicable the requirement that a question of doubt in interpreting a written contract is to be construed against the party preparing it. We think the doubt as to how the parties interpreted this provision should be resolved by the district court on their testimony and other evidence, if any, and it is so ordered." 258 F.2d 139, 143-144.

In its mandate the Court of Appeals said:

"The cause proceed * * * on the interpretation of provision 11 of the contract."

▉▉ Defendant's contention that the plain words of the contract clearly show that no option to renew was intended is directly contrary to the holding of the Court of Appeals that the contract is ambiguous and requires interpretation based on evidence extrinsic to the words of the contract. This Court is bound by the mandate of the Court of Appeals which, unlike the contract, is clear and unambiguous. Were it not for such a clear direction by the Court of Appeals this Court would be constrained to hold that the language of the contract was not ambiguous, and that such language did not grant plaintiff an option to renew upon the principles set forth in A. B. C. Distributing Co. v. Distillers Distributing Corp., 154 Cal.App.2d 175, 316 P.2d 71. On appeal in this case that case was cited to the Court of Appeals, but was not mentioned in the opinion of the Court of Appeals in this case. Therefore this Court must infer that the Court of Appeals did not consider that case to be decisive. In any event, the case at bar was reversed and remanded with directions to interpret paragraph 11 of the contract by evidence extrinsic to the words of the contract. This is a holding that, in this respect, the contract is ambiguous and uncertain, and such holding is now the law of the case and is binding on this Court whether right or wrong. The rule is well stated in 5B C.J.S. Appeal and Error § 1964, at page 554:

"While the rule applies whether the judgment is reversed and remanded, or affirmed, it is especially applicable where the appellate court has remanded the cause with specific directions as to the steps to be taken by the lower court, or on further proceedings after answer to certified questions. Moreover, the rule holds good regardless of whether the decision of the appellate court is right or wrong * * *."

See also 4 Cal.Jur.2d Appeal and Error, § 685; New York Life Ins. Co. v. Golightly, 8 Cir., 1938, 94 F.2d 316; Root v. United States, 5 Cir., 1936, 85 F.2d 612; Smith v. Kent, 5 Cir., 1935, 79 F.2d 129; American Surety Co. of New York v. Bankers' Savings & Loan Ass'n, 8 Cir., 1933, 67 F.2d 803; Aetna Life Ins. Co. v. Wharton, 8 Cir., 1933, 63 F.2d 378; McSwain v. County Board of Education, D. C.E.D.Tenn.1956, 138 F.Supp. 570. The rule of the law of the case is applicable to a decision which determines the meaning and effect of a written instrument (4 Cal.Jur.2d 611) and may be applied to a case in which the appellate court has declared a contract for an option to renew to be ambiguous, so that it was proper to resort to extrinsic evidence for the purpose of explaining what was actually intended by the parties. Cafe Apollo Co. v. Anselm, 70 Cal.App.2d 654, 161 P.2d 473.

Therefore this Court must interpret the contract as directed from "testimony and other evidence" and not from the plain words of the contract alone. The mandate, as thus explained, brings into play several rules of interpretation of contracts as set forth in the Civil Code of the State of California (§ 1635 et seq.) and certain principles of evidence as set forth in the Code of Civil Procedure of the State of California (§ 1844 et seq.). Section 1636 of the Civil Code requires that "a contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting", and Section 1637 provides that the intention of the parties, if doubtful, is to be ascertained from the rules laid down by the Code.

The quoted language from the Court of Appeals suggests that there may have been some doubt as to how the parties interpreted this provision and that the District Court "on their testimony and other evidence" should resolve that doubt. If, by such a suggestion, the Court of Appeals is referring to the rule that where the language of a contract is ambiguous and uncertain resort may be had to the subsequent conduct of the parties for the purpose of discovering what they understood the contract to mean (see 12 Cal.Jur.2d 341) then the "testimony and other evidence" is of little help in resolving any doubts as to how the parties interpreted the provision. This is so because both of the parties had the general purpose of sustaining their respective positions, namely, that plaintiff wanted to continue its position as a distributor of Calvert products as long as it could, and defendant wanted to terminate its relationship with plaintiff as soon as it could do so, without subjecting itself to successful litigation by plaintiff upon such termination.

A review of the correspondence between the parties subsequent to the execution of the contract, as revealed by the exhibits in evidence (plaintiff's exhibits 3, 4, 6, 11, 12, 13, 14, 15 and 16) shows that plaintiff was contending that paragraph 11 of the agreement gave plaintiff an option to renew, and defendant was contending that said paragraph did not grant to plaintiff an option to renew, but merely gave defendant the right to accept or refuse plaintiff's timely request for a renewal. These letters vary in degree of firmness and certainty in relation to the nearness of the contract termination date, and to the worsening and deteriorating relationship between the parties as time passed. On June 27, 1952, plaintiff commenced with " * * * we hope on or before the first of the year the Calvert Distillers Corporation executives will see the importance of renewing your contract with us," (Exh. 6)

and, on November 18, 1952, ended with the demand " * * * we hereby advise you that we have elected to exercise the option granted to us in that contract and to renew that contract commencing with its expiration date on December 31, 1952." (Exh. 3.) On October 30, 1952, defendant said, " * * * Rather than argue or even litigate with you, we agreed in March of this year to continue you as a distributor for the balance of 1952. * * * Our contract with you expires December 31st of this year. Whether we choose to renew it or not is up to us, but I would be less than honest if I did not tell you that it is extremely doubtful that we shall renew it."; (Exh. 12) and on November 20, 1952, "Apparently you have not read the contract, since you seem to think you have an option to renew. That is obviously not correct." (Exh. 13.) Therefore, there was no mutual course of conduct by the parties subsequent to the execution of the contract from which the Court can determine whether or not the parties intended an option to renew for plaintiff in paragraph 11 of the contract.

Being precluded by the mandate from making an interpretation of the contract from its language alone, and having no significant evidence of mutual construction of the contract by the parties subsequent to its execution which would indicate what the parties intended at the time it was made, the Court must turn to the other applicable rules of interpretation. This brings us to the main thrust of the holding of the Court of Appeals and plaintiff's argument that an ambiguous contract must be construed against the party who prepared the contract. Since it is unquestioned that defendant prepared the contract, including the disputed paragraph, plaintiff asserts that Sections 1649[1] and 1654[2] of the Civil Code are dispositive of the issue.

This is so, plaintiff argues, because the pleadings and the implication to be drawn from defendant's refusal to answer certain interrogatories place this issue of the case squarely within the ambit of these Code sections. The complaint alleged (paragraph III):

"The foregoing provisions of the said agreement [paragraph 11] was intended by the parties thereto to mean, and was interpreted by the plaintiff to mean that in the event the said agreement was then in full force and effect and the Key Distributing Co. desired to renew and extend the said agreement, it had the sole and exclusive option to so extend and renew the same upon giving defendants not less than 30 days' notice of such intention prior to December 31, 1952."

The answer admitted (paragraph III, third cause of action):

" * * * defendant admits that the said provision was interpreted by plaintiff to mean that in the event the said agreement was then in full force and effect and the Key Distributing Co. desired to renew and extend the said agreement, it had the sole and exclusive option to so extend and renew the same upon giving defendant not less than thirty (30) days' notice of such intention prior to December 31, 1952; * * * "

The unanswered interrogatory asked defendant to state whether plaintiff's interpretation, as admitted by the answer, was unreasonable under the circumstances. Plaintiff asserts that defendant's failure to answer is an admission that plaintiff's interpretation was reasonable.

Unless there is some other rule of interpretation which requires a different construction, the contention of plaintiff

---

1. Section 1649 provides:
"If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it."

2. Section 1654 provides:
"In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."

should be sustained. The contract has been declared to be ambiguous, the defendant has admitted that the plaintiff interpreted the words to mean that an option had been granted, and there is no evidence as to what discussions were had, or what negotiations occurred during the contract negotiating period. The parties have stipulated that plaintiff and defendant had carried on business for ten years under an oral contract on a year-to-year basis, and in 1951 a dispute occurred between the parties after which the present written contract was executed. At that time defendant terminated plaintiff's agency in two areas, but continued the agency in the area concerned in the contract. Defendant argues that, under these circumstances, it would not be reasonable for the parties to intend an option by the language used, and that the only reasonable intention that can be drawn from the words used in the light of the circumstances is that the parties continued the agency in a limited area for the balance of the year to see how the arrangement would work, and it could be extended if the plaintiff desired and defendant was willing. The difficulty with this position is that there is little, if any, evidence to support it. Other than the stipulation and general history set out in the pleadings there is nothing in the record to indicate that such an understanding was all that was intended by the words used, and, moreover, there is no indication that plaintiff ever had such intention. The general language in the letter of June 27, 1952 (Exh. 6), to the effect that plaintiff hoped defendant would renew the contract cannot be tortured into an admission by plaintiff that no option was intended.

■■ The rule that any ambiguity in a contract must be construed against the party responsible for the ambiguity is not applicable where other rules of interpretation eliminate the ambiguity. 12 Cal.Jur.2d 363; Weaver v. Grunbaum, 31 Cal.App.2d 42, 87 P.2d 406; Decter v. Stevenson Properties, Inc., 39 Cal.2d 407, 247 P.2d 11; Barham v. Barham, 33 Cal.

2d 416, 202 P.2d 289. But if there are no facts which permit the application of other rules of interpretation to remove or explain the ambiguity then the contract must be interpreted against the party who created the ambiguity.

Under the stated rules of interpretation the contract must therefore be construed to grant an option to renew in favor of plaintiff. The period for which the contract could be renewed is one year.

Judgment therefore is awarded to plaintiff on both causes of action in accordance herewith.

The Court will hear evidence on the reserved issue of damages upon the motion of either party.

