**John J. FIRTH, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 75–1973.**

United States Court of Appeals, Ninth Circuit.

May 31, 1977.

Rehearing Denied July 14, 1977.

---

Gary P. Snyder, Asst. U. S. Atty., argued, James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for defendant-appellant.

Ronald C. Winchell, argued, San Francisco, Cal., for plaintiff-appellee.

Before CHAMBERS and CHOY, Circuit Judges, and BELLONI,* District Judge.

CHAMBERS, Circuit Judge:

This case, before us now for the second time, is an appeal from the district court's judgment on remand awarding the seaman plaintiff damages in the amount of $183,000 for his admiralty injury claim under the

Public Vessels Act (PVA), 46 U.S.C. § 781 *et seq.*, and the Suits in Admiralty Act (SIA), *Id.* § 741 *et seq.* Plaintiff Firth originally brought suit in district court against the United States for injuries sustained in the course of his duties as "messman" aboard a government vessel. Plaintiff allegedly slipped and fell on a wet passageway aboard ship, causing injury to his back. The wet condition of this passageway assertedly resulted from the government's negligence and caused the accident.

After trial without a jury, the district court rendered written findings of fact and conclusions of law. The court found *inter alia* that plaintiff had failed to hold on to handrails available on the passageway, despite knowing that the passageway was unsafe. Plaintiff's injury was characterized as a "disabling disability which is not permanent in nature," and he was found to be suffering from a traumatic neurosis. The district court, after meticulously analyzing plaintiff's employment and earnings background, also found that plaintiff had a poor prior work record and that his injury would disable him only for a period of 2 years into the future. Reasoning that plaintiff would have continued as a seaman employed on a semi-annual basis but for the accident, and that such a projection would "reasonably coincide with the life-style of this plaintiff for a great number of years prior to the accident," the court assessed wage-loss compensation and anticipated earnings through 2 years of future disability at $22,936.28, such figure including an annual presumed 5.7 percent salary increase. After additional assessments of $2000 for future medical expenses and $3000 for past and future pain and suffering, offset by $693.99 of unearned wages already paid, the total recovery amounted to $27,242.29. The district court, however, reduced this total by half, based on plaintiff's 50 percent contributory fault in not availing himself of the passageway's handrails. Thus, plaintiff's net re-

*Honorable Robert C. Belloni, United States District Judge, District of Oregon, sitting by designation.

covery was $13,621.14, plus costs incurred in prosecution of the action.

Plaintiff appealed to this court on the ground that he was inadequately compensated for his injury. In a memorandum decision, we reversed and remanded. This court first found no real evidence of contributory negligence to justify cutting the recovery in half. Based on the premise that plaintiff's fall occurred at a "T" intersection on the passageway, we noted that no handrails existed at the intersection, and thus plaintiff could not have been contributorily negligent for failing to hold on to what was not there. Therefore, it was concluded that the government failed to sustain its burden of proof on the defense of contributory negligence, since it did not show "beyond conjecture whether there were any handrails in the 'intersection' where the accident happened." This court further held that the damages award "was substantially too low, even before discounting it fifty per cent." Finally, no error was found in the $2000 award for future medical expenses on the record before the court. The district court's judgment accordingly was reversed and remanded for proceedings consistent with our decision.

On remand, the district court expressed bewilderment with this court's decision and indicated its firm belief that it had reached the proper result with regard to both the contributory negligence and damages issues. Even after further evidence relating to plaintiff's lifestyle and earning capacity was admitted, the district court continued to adhere to its position. Viewing this court's decision as a compulsory mandate, however, the district court altered its findings of fact and conclusions of law in an effort to conform to our mandate. As a result, the district court found plaintiff's diagnosed medical condition after the accident was "conversion hysteria in a passive aggressive personality, precipitated by trauma;" plaintiff was declared permanently

not fit for duty and would probably require future medical care for treatment of his condition; the accident resulted in plaintiff's suffering from a permanent partial disability, which would probably prevent him from returning to his employment for some time; and plaintiff was in no way negligent. The court awarded plaintiff an undifferentiated loss-of-earnings award of $150,000. Supplemented by increased pain and suffering and future medical expense awards of $25,000 and $8000 respectively, the new net recovery amounted to $183,000, without notation of a litigation cost award or offset for paid unearned wages. In a subsequent order, the district court awarded plaintiff 7 percent interest on his judgment, to be calculated from the date of entry of the original judgment.[1] The government now appeals from the district court's decision on remand.

The government first contends that the district court on remand misconstrued the meaning and limits of this court's prior mandate. In essence, the government argues that our mandate did not, as the district court believed, preclude it from embellishing or clarifying its intended, albeit unarticulated, finding of fact that plaintiff's fall did not occur at the "T" intersection, but rather somewhere earlier on the passageway where there were handrails which plaintiff could have held. We cannot accept this argument. When a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court. 1B *Moore's Federal Practice* ¶ 0.404(10), at 571 (2d ed. 1975). Although this doctrine is not totally inflexible,[2] this court has held that a mandate is controlling as to all matters within its compass, while leaving any issue not expressly or impliedly disposed of on appeal available for consideration by the

---

1. The original judgment included no interest assessment.

2. *See Greater Boston Television Corp. v. FCC,* 149 U.S.App.D.C. 322, 463 F.2d 268, 279 (1971),

*cert. denied,* 406 U.S. 950, 92 S.Ct. 2042, 32 L.Ed.2d 338 (1972); 9 Moore's Federal Practice ¶ 110.25[2], at 274–75 (2d ed. 1975).

**994**

trial court on remand. *Kearns v. Field,* 453 F.2d 349 (9th Cir. 1971), *citing Thornton v. Carter,* 109 F.2d 316 (8th Cir. 1940);[3] *see Atlas Scraper & Engineering Co. v. Pursche,* 357 F.2d 296 (9th Cir. 1966). Our prior decision and mandate in this case, whether correct or in error,[4] was based on a thorough review of all of the evidence and consideration of the same arguments pressed here, and we concluded that the evidence did not support a finding of contributory negligence.[5] Contrary to the government's assertion, this court had before it and considered on the first appeal all of the evidence on the issue of contributory negligence, and the resulting mandate did not leave the matter open for reappraisal or clarification by the district court.[6] Thus, the lower court correctly refused to reevaluate the issue on remand.

█ This brings us next to the issue of damages. The government basically asserts that reevaluation of plaintiff's future lost earnings was not warranted under our prior mandate and, in any event, resulted in a gross exaggeration of that aspect of plaintiff's recovery.[7] In the original action, the

district court awarded plaintiff $15,438.50 for lost earnings incurred prior to the time of trial and $7497.78 for lost future earnings calculated two years into the future, which was found to be the duration of plaintiff's disability. On the first appeal, this court found the damages award "substantially too low" even before it was cut in half. On remand, new evidence was presented to indicate that plaintiff's injury was permanent in nature, that his prospects for further employment were minimal, and that a hypothetical seaman in a similar position as plaintiff could have expected to make quite a bit more than plaintiff's own past earnings history revealed. Even after receipt of this evidence, however, the district court expressed its belief that its original damages award was accurate and supported by the record. Nevertheless, in an apparent attempt to comply with our prior mandate, the district court awarded plaintiff a flat $150,000 for lost past and future earnings, based on the finding that plaintiff suffered a "permanent partial disability" which probably would sideline him for "some time." The government argues that there was insufficient evidence on remand

**3.** As the Court of Appeals for the Eighth Circuit stated in *Thornton v. Carter, supra*:

When a case has been decided by this court on appeal and remanded to the District Court, every question which was before this court and disposed of by its decree is finally settled and determined. The District Court is bound by the decree and must carry it into execution according to the mandate. It cannot alter it, examine it except for purposes of execution, or give any further or other relief or review it for apparent error with respect to any question decided on appeal, and can only enter a judgment or decree in strict compliance with the opinion and mandate. . . . . [The District Court] is without power to do anything which is contrary to either the letter or spirit of the mandate construed in the light of the opinion of this court deciding the case.

109 F.2d at 319–20 (footnote omitted).

**4.** *See Crane Co. v. American Standard, Inc.,* 490 F.2d 332, 341 (2d Cir. 1973) ("[I]t is fundamental that a district court must carry out the mandate of a court of appeals, even if the mandate was in error . . . ."); *J.C. Millett Co. v. Distillers Distributing Co.,* 185 F.Supp. 874, 877 (N.D.Cal.1960), *aff'd,* 310 F.2d 162 (9th Cir. 1962).

**5.** This conclusion was at least implicitly based on our belief that the accident occurred at the "T" intersection where there were no handrails for plaintiff to have used. Both plaintiff and an eyewitness testified that the situs of the accident was this intersection, and a photograph of the scene was marked by plaintiff to that effect. The government's reliance, both now and on the first appeal, on a rather ambiguous statement in plaintiff's pretrial deposition that there were handrails in the area where the fall occurred and that plaintiff was not holding onto them did not sway our opinion before and does not now.

**6.** No new evidence was presented on this issue in the proceedings on remand.

**7.** The government also argues, though not as vigorously, that the increase for future medical expenses from $2000 to $8000 was precluded by our prior mandate. This increase was reasonable, however, in light of the new evidence introduced on remand establishing the more permanent nature of plaintiff's injury. The increase from $3000 to $25,000 for pain and suffering is not disputed and, in any event, appears reasonable under the circumstances.

to warrant increasing the lost wages figure from a closely-justified $22,936.28, based on salary experience and future projection (plus presumed raises and offset by already paid, unearned wages), to an unexplained $150,000 figure. While we express no opinion on the ultimate damages amount to be awarded plaintiff, we do hold that the bald $150,000 figure cannot stand without justification.

Unlike the district court's first decision, its decision on remand did not itemize the lost wages award in any way.[8] To justify such a drastic increase in this aspect of plaintiff's recovery, some explanation should be provided. On its face, the evidence presented on remand was somewhat ambiguous and, in our view, does not automatically justify the increase. The average annual income of plaintiff, based on past earnings history, has not until now been a matter of great dispute, and had that figure been used to compute plaintiff's future lost earnings even for a permanent disability, the total would have been far less than the $150,000 awarded. Moreover, reliance on plaintiff's expert economist's figures for the earning capacity of a hypothetical seaman is tenuous here since those figures did not reasonably reflect plaintiff's actual past earnings. Because the district court's decision on remand lacks any information as to the factors considered by it in its damages determination, a meaningful review of whether the $150,000 lost wages award is supportable is impossible. Therefore, although we do not relish this function, we feel compelled to remand to the district court for the limited purpose of its making more detailed findings and conclusions regarding the wage-loss damages award. *See*

Carpenters Local 1273 v. Hill, 398 F.2d 360 (9th Cir. 1968); *cf. Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir. 1975) (attorney's fees).[9] In doing so, the district court may or may not require additional evidence bearing on this issue, and it should not feel bound by the $150,000 figure reached on the first remand.

Finally, the government contends that the district court's award of 7 percent interest from the date of the original judgment, but made only after the second judgment on remand, was in error. The government challenges both the rate of interest as exceeding the statutory provisions of the SIA, which permits a 4 percent annual interest rate to be levied against the government (46 U.S.C. § 743), and the timing of the interest award as circumventing the bar against prejudgment interest imposed by the PVA (*Id.* § 782). Since jurisdiction in this case was based on both of these Acts, both of their interest provisions apply and must be read together. *See Curry v. United States,* 338 F.Supp. 1219, 1224 (N.D.Cal. 1971). The 4 percent interest rate allowed by the SIA is a maximum limit which cannot be exceeded in the absence of a contract so providing. *See United States v. Isthmian Steamship Co.,* 359 U.S. 314, 79 S.Ct. 857, 3 L.Ed.2d 845 (1959). Since the instant award was discretionary and noncontractual, the district court erred in granting a 7 percent rate.

The district court's award of interest payable from the date of its original judgment also was not correct. Plaintiff maintains that use of the earlier date was proper in order to compensate him for having to initially appeal the size of the award,

---

8. The district court's lost wages award on remand did not even indicate an offset for the $693.99 of already paid, unearned wages, as had been done in the court's first damages break-down.

9. In *Carpenters Local 1273 v. Hill, supra,* this court remanded
for the limited purpose of entering supplemental findings of fact on the question of damages which shall at least state the elements and the method of computation of damages allowed and the amount awarded

for each allowed element. The district court may, in its discretion, take additional testimony on the matter of damages and may find the damages to be more or less than the $11,500.00 awarded in the judgment under review. In the event the damages thus awarded vary from the original $11,500.00 figure, an amended judgment shall be entered.
398 F.2d at 363. We feel that a similar procedure is required in this case.

**996**

and because the SIA provision arguably allowing prejudgment interest should control. 46 U.S.C. § 743.[10] Neither party cites *Lettsome v. United States,* 434 F.2d 907 (5th Cir. 1970), the reasoning of which we adopt to dispose of plaintiff's argument here. In *Lettsome,* with jurisdiction predicated on both the PVA and the SIA, an original award was entered without provision for interest. The first judgment was appealed, and the court of appeals remanded for further proceedings. Appellee on appeal, however, did not raise by cross-appeal the district court's failure to award interest. On remand, the district court awarded interest on the original judgment. On subsequent appeal, the Court of Appeals for the Fifth Circuit held that the failure to raise the issue on the first appeal barred appellee from recovering on the money judgment as originally entered, notwithstanding the claim that the original failure to award interest was "mere inadvertance" correctable by a second mandate to the district court. Similarly, the district court here could not award interest from the original judgment date, but rather only from the date of its second judgment on remand. Therefore, in computing interest on the ultimate damages award to be made by the district court on remand here, a maximum of 4 percent interest, if any, should be awarded from the date of the district court's judgment on the first remand.

Remanded for proceedings not inconsistent herewith.

---

10.  Although prejudgment interest may be proper in suits brought solely under the SIA, *see* 46 U.S.C. §§ 743, 745; *Richmond Marine Panama, S.A. v. United States,* 350 F.Supp. 1210, 1220–21 (S.D.N.Y.1972), since this suit was based on both the SIA and PVA, the latter of which expressly prohibits awards of prejudgment interest (46 U.S.C. § 782), prejudgment interest here was foreclosed. *See Curry v. United States, supra,* at 1224, *citing* 2 Norris, The Law of Seamen § 639, at 761 (2d ed. 1962).