WALLACE, Circuit Judge:
 

 This is an appeal brought by 227 commercial paper holders (CPH) of Beverly Hills Bancorp (Bancorp). We will review two orders of the district court affirming the bankruptcy court’s orders (1) reforming a settlement agreement covering the claims of the CPH against the bankrupt estate of Bancorp, and (2) denying CPH standing to vote on Bancorp’s reorganization plans. We have jurisdiction under section 24 of the Bankruptcy Act of 1898, 11 U.S.C. § 47(a),
 
 superseded by
 
 the Bankruptcy Reform Act of 1978, 11 U.S.C. § 101
 
 et seq.
 
 We reverse and remand.
 

 I
 

 This appeal is part of an ongoing flood of litigation following Bancorp’s default on its commercial paper in 1973. We need not dwell on the earlier history, which is adequately narrated in our prior opinion.
 
 See In re Beverly Hills Bancorp,
 
 649 F.2d 1329 (9th Cir.1981) (Bancorp). In that appeal, the CPH sought reversal of the district court’s order affirming the bankruptcy court’s interpretation of the Bank Fund Settlement Agreement (Settlement Agreement), in which the CPH compromised their claims against Bancorp. The bankruptcy court had attempted to both reform and interpret the Settlement Agreement. We stated that its reformation efforts were unwarranted because reformation had not been sought,
 
 id.
 
 at 1334, and we reversed its interpretation findings as erroneous as a matter of law. On remand, the district court was directed to remand the case to the bankruptcy court for the purpose of determining the proper interpretation of “interest earned” as used in section 5(c)(iii) of the Settlement Agreement.
 
 Id.
 
 at 1335.
 

 Bancorp’s Trustee petitioned this court for rehearing or in the alternative for clarification of the opinion to advise the bankruptcy court to allow the Trustee to amend his pleadings to assert mutual mistake or fraud in the drafting of the term “interest earned” in the Settlement Agreement. The Trustee stated: “The opinion of this Court, if unchanged, requires a re-trial of the interpretation of the term ‘interest earned.’ Accordingly, no prejudice to the CPH may be shown from an amendment of the pleadings to allow the reformation issue to be tried.” This petition was denied.
 

 Notwithstanding this denial, the Trustee returned to the bankruptcy court to request permission to amend its pleadings to allege mutual mistake and to ask for reformation. Over the strenuous objections of the CPH, the bankruptcy court granted the Trustee’s request. The CPH then moved for summary judgment, which was denied. Thereafter, a five week trial was held on the Trustee’s reformation claim. The bankruptcy court entered its judgment in
 
 *1337
 
 favor of the Trustee, reforming the Settlement Agreement in such a fashion as to reverse essentially every issue previously determined in favor of the CPH by this court.
 

 Following this judgment, the Trustee filed a Proposed Plan of Reorganization with the bankruptcy court, and a Shareholder’s Committee filed an alternative plan. After a hearing, the bankruptcy court issued an order entitled Order re CPH Reserve, which established a reserve under any plan in the amount of $1 million for the CPH’s claims and denied them standing to vote on any plan. The CPH appealed and the district court affirmed both of these orders.
 

 The CPH argue that the bankruptcy court’s order reforming the Settlement Agreement violates the mandate of our earlier opinion in
 
 Bancorp.
 
 They also argue that the Order re CPH Reserve imper-missibly purports to limit their ultimate recovery from Bancorp’s estate and denies them standing to vote on the reorganization plans despite the fact that their interests may be “affected” by such plans.
 

 II
 

 On remand, a trial court may not deviate from the mandate of an appellate court. As we have stated earlier, “[w]hen a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court.”
 
 Firth v. United States,
 
 554 F.2d 990, 993 (9th Cir.1977);
 
 accord Corex Corp. v. United States,
 
 638 F.2d 119, 122 (9th Cir.1981);
 
 Atlas Scraper and Engineering Co. v. Pursche,
 
 357 F.2d 296, 298 (9th Cir.),
 
 cert. denied,
 
 385 U.S. 846, 87 S.Ct. 47, 17 L.Ed.2d 76 (1966). The Supreme Court long ago emphasized that when acting under an appellate court’s mandate, an inferi- or court “cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided upon appeal; or intermeddle with it, further than to settle so much as has been remanded.”
 
 In re Sanford Fork & Tool Co.,
 
 160 U.S. 247, 255, 16 S.Ct. 291, 293, 40 L.Ed. 414 (1895).
 

 Although amendment of pleadings following remand may be permitted, such amendment cannot be inconsistent with the appellate court’s mandate.
 
 See Quern v. Jordan,
 
 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148 n. 18, 59 L.Ed.2d 358 (1979). The Trustee argues that his amended claim is not inconsistent with our mandate in
 
 Bancorp
 
 because we did not address the issue of reformation, citing
 
 Evans v. Carroll & Co.,
 
 259 F.2d 577 (9th Cir.1958), for the proposition that amendment under rule 15 after remand is permissible to assert new theories of recovery.
 
 Evans,
 
 however, does not control because the order remanding the case granted leave to amend the pleadings.
 
 Id.
 
 at 579. Here, the Trustee specifically requested that we direct the bankruptcy court to allow him to amend his pleadings and we denied the petition. With our intent so clear, the Trustee was not entitled to amend his pleadings.
 
 See Pioche Mines Consolidated, Inc. v. Foley,
 
 237 F.2d 164, 165 (9th Cir.1956);
 
 accord Cohen v. Illinois Institute of Technology,
 
 581 F.2d 658, 662 (7th Cir.1978),
 
 cert. denied,
 
 439 U.S. 1135, 99 S.Ct. 1058, 59 L.Ed.2d 97 (1979);
 
 see generally 3 J.
 
 Moore,
 
 Moore’s Federal Practice
 
 ¶ 15.11 (2d ed. 1984).
 

 On remand, a trial court cannot consider “issues decided explicitly or by necessary implication.”
 
 Liberty Mutual Insurance Co. v. EEOC,
 
 691 F.2d 438, 441 (9th Cir.1982). The bankruptcy court held that our mandate did not foreclose consideration of reformation. Its interpretation of our mandate, however, particularly in light of our denial of the Trustee’s petition for rehearing or clarification, was erroneous.
 
 E.g., Moore v. Jas. H. Matthews & Co.,
 
 682 F.2d 830, 833-34 (9th Cir.1982). The only issue remaining on remand was our direction to interpret “interest earned,” as used in section 5(c)(iii) of the Settlement Agreement. By necessary implication, this foreclosed a trial on an entirely new theory
 
 *1338
 
 of recovery. Notwithstanding this specific direction to interpret “interest earned,” however, the bankruptcy court failed to make any findings on this issue.
 

 Even if our mandate and denial of the Trustee’s petition for rehearing or clarification were sufficiently ambiguous to permit the bankruptcy court to entertain a motion to amend the pleadings, the amendment sought in this case would be inappropriate. The general rule that leave to amend under rule 15 should be freely granted,
 
 see Foman v. Davis,
 
 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), will not be extended without limit when a rule 15 motion is brought after a claim has been fully litigated on the merits through appeal. At some point, there must be finality. Permitting amendment in this case would not enhance finality, but instead would encourage seriatim judgments in the same basic dispute, as a plaintiff continues to put forth new theories of recovery.
 
 See Zenith Radio Corp. v. Hazeltine Research, Inc.,
 
 401 U.S. 321, 332-33, 91 S.Ct. 795, 803-04, 28 L.Ed.2d 77 (1971).
 

 Although the Trustee admits that he was fully aware of all the facts on which he bases his claim of mutual mistake two weeks prior to the filing of his initial pleadings, he made no effort to assert this claim at that time. Instead, he sought an interpretation of ambiguous terms in the Settlement Agreement. Only after his interpretation was rejected by this court did he turn to a request for reformation. A clearer example of an attempt to bring seriatim claims over the same issue cannot be found. Allowing the Trustee to do so would allow him to obtain a tactical advantage to which he is not entitled.
 
 See Dussouy v. Gulf Coast Investment Corp.,
 
 660 F.2d 594, 599 (5th Cir.1981) (amendment not appropriate when plaintiff is aware of facts and asserts seriatim claims for tactical reasons).
 

 Moreover, a general policy of permitting amendment after losing an appeal would not enhance rule l’s mandate that the Federal Rules be “construed to secure the just, speedy, and inexpensive determination of every action.” Fed.R.Civ.P. 1. This case is an example of inefficient use of scarce judicial resources. More than three years have past since we issued our mandate. The CPH have been forced to litigate a five week trial and this appeal. Yet, our mandate remains unfollowed.
 

 Ill
 

 The interpretation of “interest earned,” as used in section 5(a)(iii) of the Settlement Agreement, remains to be determined. Although the CPH presented evidence on this issue to the bankruptcy court, that court failed to make any findings of fact or conclusions of law as we had directed. The Trustee offered no evidence contrary to that offered by the CPH.
 

 Although remand generally is required for findings of fact, remand is not necessary when the trial court fails to make such findings and the facts in the record are undisputed.
 
 See In re T.R. Axton, Sr. Corp.,
 
 533 F.2d 503, 504 (9th Cir.1976);
 
 Yanish v. Barber,
 
 232 F.2d 939, 947 (9th Cir.1956). The interpretation of a contract, in any event, is a mixed question of fact and law subject to de novo review.
 
 See Interpetrol Bermuda Ltd. v. Kaiser Aluminum International Corp.,
 
 719 F.2d 992, 998 (9th Cir.1983). The CPH urge us to make a finding on the basis of the record. We agree that an examination of the record shows no dispute on this issue. Although we would not hesitate to remand in an ordinary case, this case is far from ordinary.
 

 Our prior opinion pointed out that parol evidence would be admissible under California law to determine “whether ... the term ‘interest earned’ was intended to be a gross or a net concept for purposes of deducting necessary costs of producing the interest, such as investment custodian fees.”
 
 Bancorp,
 
 649 F.2d at 1335. On remand, the CPH presented testimony that in the Los Angeles financial and business community, “interest earned” is understood to be a gross concept. The Trustee failed to put forth any contrary testimony.
 
 *1339
 
 Moreover, an analysis of the Notice of Proposed Settlement mailed to potential class members indicates that a gross concept was intended. In three separate places, potential class members are informed that a pro rata share of “interest earned” on fund investments will be distributed to them, in one place speaking of the
 
 “actual
 
 interest earned.” (Emphasis added). Nowhere in this highly specific summary does the Notice indicate that any expenses will be deducted from this “actual interest earned” prior to calculating shares.
 

 In light of the fact that the Trustee failed to dispute the testimony put forth by the CPH, we hold that “interest earned” for purposes of section 5(a)(iii) of the Settlement Agreement must be interpreted as “gross interest earned,” without deduction for expenses. This is the only interpretation of this term that is consistent with the Notice of Proposed Settlement.
 

 IV
 

 We also are faced with a second but different interest problem. The CPH seek interest on the sums due them under the Settlement Agreement. The Trustee argues that section 5(a)(ii) establishes a cap on the amount to be paid to the CPH that precludes the payment of interest. That section provides: “No payment or delivery of any amount shall be made to CPH from the estate of Bancorp which, when added to any amounts previously received by CPH in the Initial Delivery and in all deliveries out of the Reserves or the estate of Bancorp exceeds 80% of the Aggregate Principal Amount.” The bankruptcy court held that the CPH were not entitled to interest.
 

 The CPH claim against Bancorp originated from the debtor’s interest-bearing commercial paper. The Settlement Agreement, although we characterized it as a “contract” in
 
 Bancorp,
 
 649 F.2d at 1333, does not change the nature of the underlying claim as a loan of money. Under California law, a loan of money is “presumed to be made upon interest.” Cal.Civ.Code § 1914 (West 1954).
 
 See Bott v. American Hydrocarbon Corp.,
 
 458 F.2d 229, 231-32 (5th Cir.1972). We agree with the CPH that section 5(a)(ii)’s cap pertains solely to the maximum principal amount due them under the Settlement Agreement. The agreement is silent with respect to interest. From this silence and from the section 1914 presumption, we conclude that interest, if permissible under the Bankruptcy Act, is required to be paid by operation of law.
 

 As a general rule, however, accrual of interest on a debt is suspended upon the filing of a petition of bankruptcy.
 
 See Nicholas v. United States,
 
 384 U.S. 678, 685, 86 S.Ct. 1674, 1680, 16 L.Ed.2d 853 (1966). An award of post-petition interest, however, may be allowed when the bankrupt later proves to be solvent.
 
 See, e.g., In re Walsh Construction, Inc.,
 
 669 F.2d 1325, 1330 (9th Cir.1982)
 
 (Walsh); Bruning v. United States,
 
 317 F.2d 229, 230 (9th Cir.1963),
 
 aff'd,
 
 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964). The award of post-petition interest is dependent upon the equities of the case.
 
 See Vanston Bondholders Protective Committee v. Green,
 
 329 U.S. 156, 165, 67 S.Ct. 237, 241, 91 L.Ed. 162 (1946);
 
 In re Boston and Maine Corp.,
 
 719 F.2d 493, 496 (1st Cir.1983), ce
 
 rt. denied,
 
 — U.S. -, 104 S.Ct. 1913, 80 L.Ed.2d 461 (1984). Moreover, the bankruptcy court’s finding, as a matter of discretion, is subject to reversal only for abuse of discretion.
 
 Walsh,
 
 669 F.2d at 1328.
 

 The Trustee has had the use of these funds and has earned interest on them. The record indicates that the debtor will be solvent upon the discharge of all claims, with a net return to shareholders in excess of $4 million. The CPH have been awaiting patiently the complete discharge of their claim, after considerable litigation, for more than ten years. Under these circumstances, we hold that the denial of their claim for post-petition interest was an abuse of discretion. As a matter of equity, the CPH are entitled to interest at the legal rate of 7%,
 
 see
 
 Cal. Const., art. XV, § 1 (West Supp.1984), from the date the residual balance in the bank fund became known after the bank fund reserves were distrib
 
 *1340
 
 uted, December 3, 1978. We therefore reverse and remand on this issue solely for the purposes of calculating the total interest due.
 

 V
 

 The CPH challenge the Order re CPH Reserve in which the bankruptcy court denied them standing to vote on the reorganization plans and established a reserve of $1 million for their claim. The rights of the CPH are governed by the Bankruptcy Act of 1898 under the savings provision, section 403(a), of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 101
 
 et seq.
 
 (transitional rule).
 
 See Central Trust Co. v. Official Creditors’ Committee of Geiger Enterprises,
 
 454 U.S. 354, 357, 102 S.Ct. 695, 696, 70 L.Ed.2d 542 (1982) (per curiam). Under section 107 of the Bankruptcy Act, 11 U.S.C. § 507, creditors are considered “affected” by a plan if their interests are “materially and adversely affected thereby.” Creditors who are “affected” are entitled to vote on any proposed plan.
 
 See, e.g., In re Combined Metals Reduction Co.,
 
 557 F.2d 179, 199 (9th Cir.1977).
 

 The bankruptcy court determined that the CPH would not be “affected” if a $1 million reserve were established in the plan for their claims. Although that determination was affirmed by the district court, the latter court clearly pointed out that, should we reverse on the reformation issue, the $1 million reserve would be inadequate to protect the CPH’s claim. As we now reverse on the reformation issue, we also must reverse the Order re CPH Reserve and remand for further findings as to the “affect” of any plan on the CPH’s claim in light of our holding. In doing so, the court should include in the CPH’s claim the interest allowed on the principal as well as the principal amount in order to determine the “affect” on the CPH of the plan.
 
 See Consolidated Rock Products Co. v. Du Bois,
 
 312 U.S. 510, 527, 61 S.Ct. 675, 685, 85 L.Ed. 982 (1941).
 

 VI
 

 The CPH seek attorneys’ fees for resisting the reformation of the Settlement Agreement. They rely on 28 U.S.C. §§ 1912 and 1927, and the inherent powers of the court. Section 1912, which covers expenses incurred on appeal, only applies to appellees, not appellants, who, for example, are forced to defend a frivolous appeal.
 
 See, e.g., Ellingson v. Burlington Northern, Inc.,
 
 653 F.2d 1327, 1332 (9th Cir.1981). Under section 1927, an award of attorneys’ fees may be exacted from an attorney (i.e., a nonparty) if counsel acted “recklessly or in bad faith.”
 
 United States v. Blodgett,
 
 709 F.2d 608, 610 (9th Cir.1983)
 
 (Blodgett), quoting Barnd v. City of Tacoma,
 
 664 F.2d 1339, 1343 (9th Cir.1982). These remedies exist along with a court’s inherent power to award fees under equity whenever justice requires.
 
 See Roadway Express, Inc. v. Piper,
 
 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980).
 

 The CPH argue that the Trustee’s attempts to amend its claim were in bad faith and vexatious. We are not satisfied that the record supports an award of attorneys’ fees. The case is certainly close because of the attempted circumvention of our prior opinion. Nevertheless, we are not unmindful that a bankruptcy court judge and a district court judge determined the effort was not only appropriate but valid. Thus, we conclude that the actions of the Trustee and his counsel do not constitute the type of “bad faith” or disregard of judicial process envisioned by the statute or equitable principles.
 
 See, e.g., Overnite Transportation Co. v. Chicago Industrial Tire Co.,
 
 697 F.2d 789, 794-95 (7th Cir.1983). While we have found some of the lower court’s rulings to be erroneous, the record fails to indicate that counsel for the Trustee pursued its claims solely to multiply the proceedings in this action in a vexatious manner warranting an award of fees.
 

 VII
 

 The final request of the CPH is that we assign this case to another bankruptcy judge on remand. They essentially seek
 
 *1341
 
 disqualification of the present bankruptcy judge on the ground that his prior rulings indicate bias or prejudice toward the CPH.
 

 A judge should disqualify himself “in any proceeding in which his impartiality might reasonably be questioned,” 28 U.S.C. § 455(a), or whenever “he has a personal bias or prejudice concerning a party.”
 
 Id.
 
 § 455(b)(1). Recusal also is required under 28 U.S.C. § 144 whenever a judge has a “personal bias or prejudice” concerning a party. We have applied the same test for bias and prejudice under both statutes.
 
 See United States v. Olander,
 
 584 F.2d 876, 882 (9th Cir.1978),
 
 vacated on other grounds,
 
 443 U.S. 914, 99 S.Ct. 3104, 61 L.Ed.2d 878 (1979). The statute contemplates an objective standard requiring recusal whenever a reasonable person might question the judge’s impartiality.
 
 United States v. Winston,
 
 613 F.2d 221, 222 (9th Cir.1980)
 
 (Winston).
 
 Although we have stated that bias “may spring from many sources, often extrajudicial in their origin,”
 
 United States v. Conforte,
 
 624 F.2d 869, 881 (9th Cir.),
 
 cert. denied,
 
 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980), bias for purposes of the statute must be from an extrajudicial source, and not solely from information gained in the course of the proceedings.
 
 United States v. Grinnell Corp.,
 
 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966);
 
 Winston,
 
 613 F.2d at 223. Unfavorable rulings alone are legally insufficient to require recusal,
 
 Botts v. United States,
 
 413 F.2d 41, 44 (9th Cir.1969), even when the number of such unfavorable rulings is extraordinarily high on a statistical basis.
 
 See In re International Business Machines Corp.,
 
 618 F.2d 923, 929-30 (2d Cir.1980).
 

 The CPH cite
 
 Webbe v. McGhie Land Title Co.,
 
 549 F.2d 1358 (10th Cir.1977), for the proposition that the mere “appearance of impartiality,”
 
 id.
 
 at 1361, permits us to remand a case to another bankruptcy judge.
 
 Webbe,
 
 however, was a case in which the record demonstrated that the trial judge failed even to hear a party’s argument before making his determination of an issue.
 
 Id.
 
 No such obvious bad conduct is apparent in the record that warrants a directed recusal,
 

 VIII
 

 It is time for this litigation to come to an end. The two judgments of the district court are reversed, and the case is remanded to the district court with instructions to remand to the bankruptcy court for further proceedings that are strictly in conformance with this opinion.
 

 REVERSED AND REMANDED.